946 So.2d 828 (2007)
Michelle SULLIVAN and Jeffrey Sullivan, Appellants
v.
SKATE ZONE, INC., Appellee.
No. 2005-CA-01797-COA.
Court of Appeals of Mississippi.
January 16, 2007.
*829 Julie Lynn Love, attorney for appellants.
Jason Richard Bush, Walker (Bill) Jones, Jackson, attorneys for appellee.
Before KING, C.J., IRVING and GRIFFIS, JJ.
KING, C.J., for the Court.
¶ 1. Michelle and Jeffrey Sullivan appeal the Lowndes County Circuit Court's grant of summary judgment in favor of Skate Zone, Inc. in a premises liability action. The Sullivans raise the following issues on appeal, which we quote verbatim:
I. Whether the trial court erred in granting summary judgment because the defendant created the hazardous condition which caused bodily injury to the plaintiff, Michelle Sullivan, and no proof of actual notice of this particular item being on the floor is required.
II. Whether the trial court erred in granting summary judgment because the defendant expressly admits it failed to warn patrons of a known hazardous condition.
III. Whether the trial court erred in granting summary judgment because the plaintiff proffered evidence the defendant should have known this specific toy was on the rink floor.
IV. Whether the trial court erred in granting summary judgment when there is clear and convincing evidence to support an award of punitive damages.
Finding no error, we affirm the trial court's grant of summary judgment.

FACTS
¶ 2. On June 5, 2003, Michelle Sullivan and several family members arrived at Skate Zone, a roller skating rink, in Columbus at approximately 7:00 p.m. At approximately 7:35 p.m., Sullivan was backwards skating with her son when she skated over what she believed to be a two-inch plastic toy and fell to the ground. *830 Sullivan instructed her son to dispose of the toy. Sullivan's sister drove Sullivan to the emergency room at Baptist Golden Triangle Hospital where it was determined that Sullivan had broken her right arm.
¶ 3. On June 11, 2004, Sullivan filed a premises liability lawsuit against Skate Zone. Her husband, Michael, submitted a claim for loss of consortium. On May 2, 2005, Skate Zone filed a motion for summary judgment. The Sullivans responded on May 20, 2005. The trial court heard oral argument on the motion for summary judgment on August 15, 2005 and granted summary judgment without written opinion one week later.

ANALYSIS
¶ 4. This Court employs the de novo standard when reviewing grants of summary judgment. Moss v. Batesville Casket Co., 935 So.2d 393, 398(¶ 15) (Miss. 2006). The moving party has the burden of establishing through pleadings, depositions, answers to interrogatories, admissions, and affidavits that no genuine issue as to any material fact exists. Id. at (¶ 16). If the movant proves such, he is entitled to summary judgment as a matter of law. Id. However, the evidence must be viewed in the light most favorable to the non-moving party. Id. at (¶ 17).
¶ 5. In order for an invitee to succeed in a premises liability action, the invitee must either prove that a negligent act of the property owner caused the invitee's injury or that a third party created a dangerous condition of which the property owner knew or should have known. Grammar v. Dollar, 911 So.2d 619, 624(¶ 12) (Miss.Ct.App.2005) (citing Anderson v. B.H. Acquisition Inc., 771 So.2d 914, 918 (¶ 8) (Miss.2000)). Sullivan asserts all three basis of premises liability.

I. Whether Skate Zone Caused a Dangerous Condition
¶ 6. Sullivan does not argue that a Skate Zone employee actually caused the toy to be on the skating rink. Rather, she argues that Skate Zone breached its duty of keeping the premises in a reasonably safe condition by failing to prevent the toys distributed in the adjacent arcade from being thrown onto the rink.[1] The thrust of Sullivan's first argument is that Skate Zone was aware that toys from the arcade could be thrown onto the rink, Skate Zone employed floor guards whose primary responsibility was to inspect the rink and to monitor the activity of patrons, and Skate Zone did not have a floor guard on duty the night of Sullivan's fall.
¶ 7. Sullivan argues that the case sub judice is identical to the case of Elston v. Circus Circus Miss., Inc., 908 So.2d 771 (Miss.Ct.App.2005). In Elston, the plaintiff slipped in the casino lobby on a puddle of water in the immediate vicinity of some decorative plants near the front desk. Elston argued that the casino was negligent for either creating the dangerous condition or for having constructive knowledge of the dangerous condition and failing to cure it. The trial court granted summary judgment in favor of the casino. This Court reversed, finding that genuine issues of material fact existed regarding each theory of liability. Regarding the question of whether the casino created the dangerous condition, the Court found that the lobby plants were watered on a regular basis; *831 the casino retained two employees whose sole responsibility it was to canvas the lobby floor twice per hour to ensure that no debris nor spills were present on the lobby floor; and all employees, regardless of job description, were required to clean spills and debris on the lobby floor. The Court found that although the casino had an established procedure for ensuring that the premises were kept in a reasonably safe condition, the casino could not establish that any employee had inspected the lobby floor on the day of Elston's fall, thereby creating a genuine issue of material fact.
¶ 8. Sullivan equates Skate Zone's distribution of prizes in the nearby arcade with the casino's watering of the lobby plants. However, whereas in Elston a jury could have found the puddle on which Elston slipped was caused by a casino employee watering the nearby plants, Sullivan does not even argue that a Skate Zone employee actually caused the plastic object to be on the skating rink floor. Furthermore, unlike Elston, the testimony of Skate Zone's manager established that the rink had been inspected less than one hour prior to Sullivan's fall, and that the manager continued to monitor the floor throughout the skating session.
¶ 9. Sullivan also argues that Skate Zone was negligent for not having a floor guard on duty on the evening of her fall. Property owners owe invitees a duty to keep the premises in a reasonably safe condition but are not insurers of invitees' safety. Leffler v. Sharp, 891 So.2d 152, 156(¶ 12) (Miss.2004). Skate Zone has a maximum capacity of 1,065 patrons. Elbert Kimbrell, Skate Zone's general manager, testified that he puts one floor guard on duty per every 200 skaters. On slower nights he serves as a floor guard. Sullivan's fall occurred on a Monday night when Skate Zone had approximately 77 patrons skating. Kimbrell testified that he monitored the rink from a disc jockey booth that overlooks the rink and did not see any debris on the floor during the time frame in which Sullivan approximated that she fell. Furthermore, Kimbrell testified that he personally inspected the floors at 6:45 p.m., fifteen minutes before Skate Zone reopened for its second session and approximately fifty minutes before Sullivan fell, and testified that the floors were still clean from being dust-mopped after the close of the earlier session.
¶ 10. "The basis of liability is negligence and not injury. Proof merely of the occurrence of a fall on a floor within business premises is insufficient to show negligence on the part of the proprietor." Byrne v. Wal-Mart Stores, Inc., 877 So.2d 462, 465(¶ 6) (Miss.Ct.App.2003) (quoting Sears, Roebuck & Co. v. Tisdale, 185 So.2d 916, 917 (Miss. 1966)). Sullivan failed to produce any proof that the object which caused her fall was on the rink because of any act or omission of Skate Zone. Summary judgment was properly granted as to this theory of premises liability.

II. Whether Skate Zone failed to warn patrons of a known hazardous condition
¶ 11. As previously stated, Kimbrell expressly testified that he saw no debris on the skating rink prior to Sullivan's fall. Sullivan did not present proof of any other employee's knowledge of the plastic object's presence on the rink. Instead, Sullivan argues that the fact Skate Zone utilizes a floor guard to police the rink and pick up debris evidences the fact that "Skate Zone was clearly on notice the rink floor is particularly susceptible to these objects being thrown on the floor." Additionally, Sullivan claims that Kimbrell had actual knowledge of the hazard, citing *832 to the following exchange from his deposition:
Q. Would it be fair to say that anywhere you got your 42-inch rail, it would be possible for a patron to toss a small object of any kind onto that floor, wouldn't it?
A. Yes, ma'am. It is.
Q. It does happen from time to time, doesn't it?
A. Yes, ma'am.
Q. It is one of the known hazards of running a skating rink?
A. Yes, ma'am. That's part of it.
Sullivan misunderstands the second basis for premises liability. The standard is whether the defendant had actual knowledge of a dangerous condition and failed to warn the plaintiff. Anderson, 771 So.2d at 918(¶ 8). Sullivan showed no more than it was possible for various objects to find their way onto the skating rink.
¶ 12. Sullivan is essentially presenting the "mode of operation" argument for premises liability which has been previously rejected by this Court. Under the "mode of operation" theory of premises liability, "when an owner of a self-service establishment has actual notice that his mode of operation creates certain risks of harm to customers, and those risks are foreseeable, it is not necessary for the plaintiff to prove notice of the hazard that caused the injury." Byrne v. Wal-Mart Stores, Inc., 877 So.2d 462, 466-67(¶ 11) (Miss.Ct.App. 2003). In Byrne, the Court concluded that "by accepting Byrne's argument, we would be subjecting store owners who allow customers to walk around the store with food, toys or other potentially `dangerous objects' to a strict liability standard." Id. at 467 (¶ 12). This theory is simply inconsistent with the well-established principle that property owners owe invitees a duty of reasonable care to keep the premises in a reasonably safe condition, not to ensure that the premises are completely risk-free. Id.
¶ 13. The trial court was also correct in granting summary judgment under the actual knowledge theory of premises liability.

III. Whether Skate Zone had constructive knowledge of a dangerous condition.
¶ 14. Constructive knowledge exists where a dangerous condition exists for such a length of time that an owner exercising reasonable care should be alerted to its presence. Anderson, 771 So.2d at 918(¶ 10) (citing Drennan v. Kroger Co., 672 So.2d 1168, 1170 (Miss.1996)). Sullivan attempted to prove that the plastic object may have been on the rink floor for some time by testifying that the plastic object appeared to be chipped and scuffed. However, Sullivan also testified that she had skated around the rink several times before falling and had not seen the object until after she fell. Sullivan's son also speculated that the object may have chipped when his mother tripped over it. Also, Skate Zone employees had swept the floor prior to the 7:00 p.m. opening, and Elbert had inspected the rink less than one hour before Sullivan's fall to ensure no debris was on the rink floor. Elbert also testified that he monitored the floor from the disc jockey booth and saw no debris on the floor. We find a total lack of evidence existed to determine how the plastic object came to be on the skating rink floor or how long it had been there. The trial court was also correct in granting summary judgment under the constructive knowledge theory of premises liability.
¶ 15. Because we find that summary judgment was properly granted, we decline to address the issue concerning punitive damages.
¶ 16. THE JUDGMENT OF THE LOWNDES COUNTY CIRCUIT COURT *833 IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR. CARLTON, J., NOT PARTICIPATING.
NOTES
[1] The arcade contains "redemption games" in which a patron receives a certain number of tickets according to how skillfully he has played the game. The patron can then redeem his accumulated tickets for small prizes. Sullivan opines that the small plastic object she tripped on was a prize from the arcade.