BARNES, J„ for the Court:
¶ 1. Valerie Bonner filed a negligence action against Imperial Palace of Mississippi LLC (IPM) regarding an injury she allegedly sustained in 2010 when she slipped and fell at the Back Bay Buffet at the Imperial Palace Casino, Resort, and Spa in Biloxi, Mississippi. The Harrison County Circuit Court granted IPM’s motion for summary judgment. Finding no error, we affirm.
STATEMENT OF FACTS AND PROCEDURAL HISTORY
¶ 2. On June 5, 2010, Bonner and her family traveled from their hometown of Perkinston, Mississippi, to the Imperial Palace in Biloxi, Mississippi. Arriving at the Back Bay Buffet, located inside the Imperial Palace complex, at approximately 9:00 a.m., the party consisted of Bonner, her husband, their three children, and Bonner’s granddaughter.
¶ 3. Bonner left her family’s table to go to the buffet for a second plate of food when she lost her balance, slipped, and fell to the floor near the area where the orange juice is served. Bonner landed on her left knee. When she was on the floor, she noticed a grape next to her along with a wet substance. Bonner later testified that while walking her feet hit a wet substance — “a water spill” that was approximately six inches in size — which caused her feet to become uncontrollable, result *681 ing in the fall.[1] At the buffet, grapes are served loose, or off the stem. Bonner did not know from where the grape or water spill originated, or how long either had been on the floor. Nor was Bonner aware of where on the buffet grapes were served.
¶ 4. A buffet guest, later identified as Warren Dipuma, was walking by, saw Bonner on the floor after she fell, and asked if she was okay. He stated he saw a wet substance on the floor and one “smooshed” grape. He did not know how the grape got on the floor, or how long it had been there before Bonner fell. Dipuma had not seen anyone else in the area slip or fall.
¶ 5. After she fell, Bonner returned to her table. Bryan Moberly, an Imperial Palace security employee, took Bonner’s statement. He asked if she wanted an ice pack, and provided one to her. Moberly also questioned Dipuma about the incident.
¶ 6. After Bonner’s fall, buffet employee Ryan McQueen said he picked up the grape and disposed of it. On June 6, McQueen gave a voluntary statement that he did not observe Bonner’s fall, but did see a “smashed grape” on the floor where Bonner had fallen. On June 10, McQueen gave a supplemental statement that the grape must have “just” fallen because he checked the area less than five minutes earlier, and no grape was on the floor.
¶ 7. A surveillance incident report states that the Imperial Palace surveillance reviewed the video showing the area during the approximately ten minutes prior to Bonner’s fall, and there were no spills or dropped food during this time period. The surveillance video showed numerous individuals walk through the area where Bonner fell without incident. Before Bonner fell, McQueen can be seen cleaning and tending to the orange-juice station, and even wiping the floor near the station with a cloth. A wet substance or a smashed grape cannot be seen on the floor where Bonner slipped; the floor in the area appears to be quite clean.
¶ 8. After speaking with security, Bonner left the Imperial Palace in a wheelchair. The following day, Bonner’s husband drove her to Forrest General Hospital, where she was admitted to the emergency room. X-rays were taken, and Bonner was instructed to follow-up with a specialist if the pain continued. The pain persisted, and as a result, in November 2010, Bonner underwent an arthroscopy of her left knee. She was released from medical treatment in January 2011.
¶ 9. In May 2011, Bonner filed a complaint against IPM for negligence. Discovery ensued, and in December 2011, IPM filed a motion for summary judgment, claiming that Bonner failed to present evidence that: IPM caused the water to be on the floor; IPM had prior knowledge that water was on the floor; or the length of time the water was present on the floor before her fall. After a hearing, the trial court granted summary judgment in favor of IPM, dismissing Bonner’s claim with prejudice. Bonner timely filed a notice of appeal.
STANDARD OF REVIEW
¶ 10. The appellate court’s standard of review for the trial court’s grant or denial of summary judgment is de novo. State ex rel. Hood v. Louisville Tire Ctr., Inc., 55 So.3d 1068, 1072 (¶ 9) (Miss.2011) (citing Evan Johnson & Sons Constr., Inc. v. State, 877 So.2d 360, 364 (¶ 11) (Miss.2004)). Summary judgment shall be *682 granted if “the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” Id. (quoting M.R.C.P. 56(c)). The trial court must carefully review the evidence in the light most favorable to the nonmoving party. Id. The party opposing summary judgment may not rest upon the allegations of her pleadings, but must set forth specific facts showing there is a genuine issue for trial. M.R.C.P. 56(e). If the opposing party, bearing the burden of proof at trial, “fails to make a showing sufficient to establish an essential element of the claim or defense, then all other facts are immaterial, and the moving party is entitled to judgment as a matter of law.” Alfonso v. Gulf Pub. Co., 87 So.3d 1055, 1060 (¶ 16) (Miss.2012) (quoting Galloway v. Travelers Ins. Co., 515 So.2d 678, 684 (Miss.1987)).
ANALYSIS
¶ 11. In Mississippi, “[a] business owner or operator owes a duty to the invitee to keep its premises in a reasonably safe condition and to warn of dangerous conditions which are not readily apparent to the invitee.” Drennan v. Kroger Co., 672 So.2d 1168, 1170 (Miss.1996) (citing Munford Inc. v. Fleming, 597 So.2d 1282, 1284 (Miss.1992)). However, business owners are not insurers against all injuries. Munford, 597 So.2d at 1284 (citing Jerry Lee’s Grocery, Inc. v. Thompson, 528 So.2d 293, 295 (Miss.1988)). “Strict liability is not imposed on [business owners] in premises liability cases.” Martin v. Rankin Circle Apartments, 941 So.2d 854, 864 (¶ 45) (Miss.Ct.App.2006) (citing Cor-ley v. Evans, 835 So.2d 30, 41 (¶ 32) (Miss.2003)). Mere proof “of the occurrence of a fall on a floor within [the] business premises is insufficient to show negligence on the part of the proprietor.” Stanley v. Boyd Tunica, Inc., 29 So.3d 95, 97 (¶ 8) (Miss.Ct.App.2010) (quoting Byrne v. Wal-Mart Stores, Inc., 877 So.2d 462, 465 (¶ 6) (Miss.Ct.App.2003)).
¶ 12. In Mississippi,
[i]n order for a plaintiff to recover in a slip-and-fall case, he must (1) show that some negligent act of the defendant caused [her] injury; or, (2) show that the defendant had actual knowledge of a dangerous condition and failed to warn the plaintiff; or, (3) show that the dangerous condition existed for a sufficient amount of time to impute constructive knowledge to the defendant, in that the defendant should have known of the dangerous condition.
Downs v. Choo, 656 So.2d 84, 86 (Miss.1995). “All three types of premises-liability claims require a showing of a dangerous condition.... [A] ‘property owner cannot be found liable for the plaintiffs injury where no dangerous condition exists.” Stanley, 29 So.3d at 97-98 (¶ 10) (quoting Delmont v. Harrison Cnty. Sch. Dist., 944 So.2d 131, 133 (¶ 5) (Miss.Ct.App.2006)).
¶ 13. Here, it is undisputed that Bonner was a business invitee to the Back Bay Buffet; thus, IPM owed her the duty to keep the premises reasonably safe, and to warn of any dangerous conditions that might not be readily apparent to her. Since Bonner had the burden of proof at trial, she must have provided sufficient evidence on one of the above three types of premises liability to withstand a motion for summary judgment.[2]
*683 ¶ 14. Bonner advances several arguments to show the trial court erred in granting summary judgment in favor of IPM. She contends the trial court erred in rejecting her mode-of-operation argument on premises liability. She also claims the evidence proves all three types of premises liability would apply under the Choo test, even though only one would suffice. Additionally, she argues there are conflicting statements regarding the length of time the grape was on the floor, which create a genuine issue of material fact. We shall discuss each of Bonner’s arguments in turn.
I. Whether the trial court erred in rejecting Bonner’s mode-of-operation theory of liability.
¶ 15. Bonner contends that the mode-of-operation theory of liability would apply, and she can meet her burden of proof under it. She appears to argue that in order to create a jury issue about IPM’s duty of reasonable care, all that was needed was the presence of the grape on the floor, because it was on the floor due to IPM’s manner of serving grapes, or “mode of operation.” She contends that IPM should have been aware that grapes, which are round, when removed from the stems, can roll onto the floor and create a hazard.
¶ 16. The advantage of this theory of liability is that “when an owner of a self-service establishment has actual notice that his mode of operation creates certain risks of harm to customers, and those risks are foreseeable, it is not necessary for the plaintiff to prove notice of the hazard that caused the injury.” Sullivan v. Skate Zone, 946 So.2d 828, 832 (¶ 12) (Miss.Ct.App.2007) (quoting Byrne, 877 So.2d at 466-67 (¶ 11)). Bonner argues that IPM gave actual notice it was creating certain risks that were foreseeable by serving loose grapes on the buffet; therefore, she did not have to prove IPM had actual or constructive knowledge of the hazard that caused her injury under this theory.
¶ 17. In ruling from the bench at the summary-judgment hearing, the trial judge stated that the mode-of-operation theory is not the law in Mississippi. Indeed, IPM notes that in Sullivan, this Court rejected the mode-of-operation principle. Id. There, the plaintiff was skating backwards at a roller rink when she skated over a plastic toy on the rink floor, and fell and broke her arm. Id. at 829-30 (¶ 2). Summary judgment was granted in favor of Skate Zone, and the plaintiff appealed, asserting that all three types of premises liability applied. Id. at 830-32 (¶¶ 3, 11). This Court held the rink did not cause a dangerous condition; the plaintiff “failed to produce any proof that the object which caused her fall was on the rink because of any act or omission of Skate Zone.” Id. at 831 (¶ 10). Regarding whether the defendant had actual knowledge of a dangerous condition but failed to warn patrons, the plaintiff argued that the defendant was aware toys from the nearby arcade could be thrown on the rink floor, and were thrown on the rink floor, because the rink employed a skate guard to pick up such debris. Id. at 832 (¶ 11). This Court stated the plaintiffs argument was basically a mode-of-operation argument, which had been “previously rejected by this Court” in Byrne. Id. at (¶ 12) (citing Byrne, 877 So.2d at 466-67 (¶¶ 11-12)).[3]
*684 ¶ 18. Bonner contends the trial judge erred when rejecting this theory of liability, misconstruing Mississippi law and placing an “undue emphasis” on Sullivan, as the rejection “is contradicted by other longstanding pillars of Mississippi law.” However, Bonner offers no such “pillars,” and we are unable to find any ourselves.
¶ 19. Additionally, Bonner argues that both Sullivan and Byrne are factually distinguishable because in those cases there was no proof of where the objects that caused the injury, the toy and cookie respectively, came from. Here, Bonner claims the grape that caused her fall definitively came from the buffet. However, there is no proof of the grape’s origins in the record, or where grapes are served on the buffet.
¶20. Bonner also cites as instructive Merritt v. Wal-Mart Stores, Inc., 911 F.Supp. 242 (S.D.Miss.1995).[4] There, an off-duty Wal-Mart employee reacted promptly and started cleaning up a spill made by a child near a self-service-drink area lacking non-skid matting. Id. at 242-43. But before she could clean it up, a customer slipped and fell. Id. at 242. There was no time to warn the plaintiff of the spill, as the fall occurred in less than a minute from the spill. Id. at 242-43. The Memtt court concluded there was no jury issue on whether Wal-Mart took adequate action to clean up the spill, but there was a jury issue on whether Wal-Mart had created an unreasonably safe area. Id. at 247-48. The plaintiff argued a mode-of-operation theory — Wal-Mart created an unreasonably safe area. Id. at 244^15. The supreme court discussed the history of slip-and-fall jurisprudence,[5] and concluded the three theories of the Choo test on premises-liability recovery were applicable, and rejected a mode-of-operation theory. Id. at 246-47. We find this case does not advance Bonner’s argument.
¶ 21. Bonner also cites F.W. Woolworih Co. v. Stokes, 191 So.2d 411 (Miss.1966), in support of her proposition that she does not have to prove knowledge or notice of the dangerous condition by IPM. In F.W. Woolworih, the plaintiff slipped and fell in a puddle of water that was tracked in from outside the store. Id. at 412. However, the defendant knew that water was being tracked into the store and undertook mopping in response. Id. at 413. The supreme court held that since it had been raining all day, the customer was not required to prove that the storekeeper had *685 actual or constructive knowledge of the dangerous condition. Id. at 417. Instead, liability turned merely on whether the storekeeper had taken reasonable precautions to prevent the hazard. Id. at 418. However, “this reasoning applied to a hazard which was only present on intermittent occasions, and not to a hazard inherent in the [storekeeper’s] method of doing business.” Millers of Jackson, Meadowbrook Rd., Inc. v. Newell, 341 So.2d 101, 103 (Miss.1976) (citing F.W. Woolworth, 191 So.2d at 416-18).
¶ 22. Bonner claims F.W. Woolworth is analogous to IPM not exercising ordinary care to prevent the hazardous grape on the floor near the buffet. We disagree. Unlike F.W. WoolwoRh, here there is no evidence IPM had notice of the grape and/or water on the floor before Bonner’s fall, and this is certainly not comparable to the intermittent occasion of rainwater being tracked into a store.
¶ 23. In support of her argument that grapes and other produce can create a dangerous condition if served a certain way, Bonner cites three out-of-state eases that utilize a mode-of-operation theory of liability: Cobb v. Skaggs Cos., 661 P.2d 73 (Okla.Civ.App.1983), Wollerman v. Grand Union Stores, Inc., 47 N.J. 426, 221 A.2d 513 (1966), and Nisivoccia v. Glass Gardens, Inc., 175 N.J. 559, 818 A.2d 314 (2003).[6] However, since Mississippi has not approved this theory of liability, these cases are not persuasive authority.
¶ 24. In sum, the trial court did not err in rejecting Bonner’s mode-of-operation argument.
II. Whether a negligent act by IPM caused Bonner’s injury.
¶ 25. In Mississippi, as stated earlier, one way to establish premises liability is to “show that some negligent act of the defendant caused [the plaintiffs] injury.” *686 Choo, 656 So.2d at 86. Bonner argues IPM created a hazardous condition for patrons by the negligent act of serving grapes removed from the stem and in an open container, whereby grapes could more likely fall to the floor from customers’ plates. Additionally, she claims that IPM’s lack of safety systems and failure to utilize its standard cleanup procedures for spills and debris on the floor equate to a negligent act. She claims these negligent acts by IPM caused Bonner’s injury, thereby establishing a jury issue on whether IPM exercised reasonable care in the manner it served grapes.
A. Negligent Act
¶ 26. Bonner claims that by serving loose grapes on flat plates, IPM is just “inviting round grapes to fall to the floor” in the buffet area.[7] However, Bonner failed to offer any proof that the grape which caused her to fall was on the buffet floor because of any negligent act or omission by IPM — all that IPM admitted was that a grape was on the floor at the time of the incident. The record shows IPM took reasonable precautions to prevent patrons from slipping on food or liquid at the buffet. There is no evidence Bonner or any other customers or employees knew how the grape and/or liquid came to be on the floor. Accordingly, Bonner could not meet her burden of proof that a negligent act by IPM caused Bonner’s injury.
B. Lack-of-Safety-Systems Argument
¶27. Bonner argues that IPM acted negligently because it lacked safety sys-terns, and failed to discover and eliminate the grape and/or liquid that caused Bonner’s fall. IPM claims this argument is very similar to a mode-of-operation argument as well — a claim Bonner denies.
¶ 28. Bonner contends IPM admitted in discovery that it had no safety systems, rules, manuals, and/or corporate safety programs utilized to minimize hazards at the buffet. However, this statement is inaccurate. What IPM admitted is not having any “documents” relating to these items. In response to an interrogatory about safety systems, safety rules, and corporate safety programs, IPM explained a detailed procedure for when a spill occurs on the floor.[8] Further, the surveillance video shows McQueen, the employee on duty in the area, keeping the area quite clean, and even wiping the floor with a yellow cloth near the orange-juice stand a few minutes before Bonner’s fall.
¶ 29. Bonner also complains that McQueen did not use any of the safety procedures to clean the area stated in IPM’s response to interrogatories. However, the video actually shows the floor of the area where Bonner fell to be free of any visible liquid or a smashed grape. Any liquid and/or grape on the floor must have been quite small.[9] In fact, in the video a bystander had to point to the area where Bonner slipped so McQueen could clean the area. The video shows once McQueen realized Bonner had slipped, he used a yellow cloth to pick up something, *687 carefully wipe the floor where she slipped, and dispose of the cloth. We fail to see how McQueen’s cleaning techniques before and after Bonner’s fall could be interpreted as a negligent safety procedure, or could have somehow caused the grape to be on the floor. We also fail to see the “numerous dangerous conditions” that Bonner claims appear during the short span of the video. Further, just because McQueen wiped the floor with a cloth near the juice stand before Bonner fell does not mean he should have seen or known about a grape on the floor where Bonner fell. There is no genuine issue of material fact that McQueen failed to use reasonable care in monitoring and cleaning the floor, or that IPM had inadequate safety procedures in place to deal with spills and substances on the floor of its buffet. We find no merit to this argument.
III. Whether IPM had actual or constructive knowledge of a dangerous condition.
¶ 30. A plaintiff can recover on a premises-liability claim if she can “show that the defendant had actual knowledge of a dangerous condition and failed to warn the plaintiff ... [or] show that the dangerous condition existed for a sufficient amount of time to impute constructive knowledge to the defendant, in that the defendant should have known of the dangerous condition.” Choo, 656 So.2d at 86. When the dangerous condition was created by the negligence of the business owner or someone under his authority, no proof of the owner’s knowledge of the condition is necessary. Drennan, 672 So.2d at 1170. However, if the dangerous condition was created by someone not associated with the business or its operation, “the plaintiff must produce evidence demonstrating that the operator had actual or constructive knowledge of the condition.” Id. (citing Choo, 656 So.2d at 86).
¶ 31. Bonner argues that she does not need to prove notice under her mode-of-operation argument, or, alternatively, she does not need to prove notice because she has shown IPM caused the dangerous condition. Even so, she claims she can still prove that IPM had both actual and constructive knowledge of the dangerous condition.
A. Actual Knowledge
¶ 32. Bonner claims IPM had actual knowledge of the dangerous condition due to three other unrelated incidents involving grapes in the buffet area in May and November 2008, and June 2009.[10] Bonner apparently argues these incidents should be used to impute actual knowledge to IPM.
¶ 33. In response, IPM argues that offering these prior incidents as proof of IPM’s actual knowledge of a dangerous condition is improper. We agree. “Mississippi has long followed the rule of admitting evidence of prior acts or accidents for the purpose of showing a dangerous condition and notice thereof, but this evidence has been admitted only in cases where other proof of negligence is present.” Hartford Ins. Grp. v. Massey, 216 So.2d 415, 417 (Miss.1968) (citations omitted). Admissibility is limited — the former accidents must have “happened under sub *688 stantially the same circumstances” as the subject accident. Id. Additionally, the other accidents may not be too remote in time from the accident at issue — the supreme court has found a one-year limitation is reasonable. Irby v. Travis, 935 So.2d 884, 895 (¶ 24) (Miss.2006) (citing Barrett v. Parker, 757 So.2d 182, 188 (¶ 19) (Miss.2000)).
¶ 34. Here, while the three incidents involved grapes, Bonner does not offer any evidence of “other proof of negligence,” as required b.y Massey. Further, we note only one of the incidents occurred within a year of Bonner’s fall. Moreover, these incidents are insufficient to support Bonner’s argument that IPM had actual knowledge that serving grapes off the stem was a dangerous practice.
¶ 35. Additionally, Bonner complains that buffet employee McQueen, just a few feet from the site of Bonner’s fall, did not warn Bonner or any other patrons of the grape. However, in the surveillance video, McQueen was not aware there was a grape on the floor (nor can a grape be seen on the video), and he did not see Bonner fall — McQueen was tending to the orange-juice stand with his back turned to Bonner when she fell. Bonner also argues that IPM failed in its responsibility to have employees “constantly monitor the floors.” However, in the video, McQueen was quite active in keeping the floors free of liquid and debris. In fact, he was wiping the floor near the juice stand a few minutes before Bonner fell.
¶ 36. Bonner failed to prove that IPM had actual knowledge that the grape or liquid was on the floor prior to Bonner’s fall. Further, Bonner offers no evidence to show that these prior incidents are related to the way IPM serves grapes.
B. Constructive Knowledge
¶ 37. Bonner argues constructive knowledge is imputed to IPM based on the way it served the grapes on the buffet. “Constructive knowledge is present where, based on the length of time that the condition existed, the operator exercising reasonable care should have known of its presence.” Drennan, 672 So.2d at 1170. Bonner argues that the dangerous condition, the grape and/or liquid substance, existed for a sufficient amount of time to impute constructive knowledge to IPM. Specifically, Bonner maintains that the grape and liquid were on the floor for over ten minutes. Finally, she argues, in a separate issue, that there are conflicting statements regarding the length of time the substances were on the floor, which creates a genuine issue of material fact.
¶ 38. In contrast to Bonner’s contentions, we find no evidence in the record as to how long the grape and/or liquid had been on the floor before Bonner fell. Bonner did not know how long the substances had been on the floor before she fell, nor did any of her family members. During their trips to the buffet, no one in Bonner’s family saw a grape and/or liquid on the floor. Dipuma, who was nearby when Bonner fell, but did not witness the fall, walked through the area before Bonner fell and testified he did not see anything on the floor. Before the incident, Dipuma also saw other customers walk through the area where Bonner fell, without a problem. The surveillance video confirms this statement, as it shows numerous people walking through the same area where Bonner fell without incident, including Bonner the first time she went to the buffet. Additionally, McQueen, working in the area where Bonner fell, walked over the area where Bonner fell five minutes beforehand and testified he did not observe a grape on the floor.
¶ 39. Finally, Bonner claims there is a factual issue as to how long the grape was on the floor because the surveillance video *689 was reviewed for ten minutes prior to Bonner’s fall, yet no dropped food or spills were observed.[11] However, a grape and liquid substance were cleaned off the floor after Bonner’s fall. Therefore, Bonner contends a jury could infer that the substances could have been on the floor for longer than ten minutes.
¶ 40. We disagree with these contentions. As IPM states, Bonner must produce evidence where it could be reasonably concluded that a grape or water was on the floor long enough that IPM should have known about it. Bonner failed to do so.
CONCLUSION
¶ 41. The evidence shows IPM maintained its duty to keep the premises reasonably safe. Bonner does not offer sufficient evidence that a dangerous condition existed. Nor does she prove any of the three bases of premises liability. Bonner fails to offer evidence that IPM was responsible for the grape and/or liquid being on the floor, or that IPM had actual or constructive knowledge of their presence. Accordingly, the trial court did not err in granting summary judgment in favor of IPM.
¶ 42. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR.

. However, in reports at the time of the incident, Bonner only mentioned that she slipped on a grape; she did not mention a water spill.

. See Karpinsky v. Am. Nat'l Ins. Co., 109 So.3d 84, 89 (¶ 13) (Miss.2013) (The defendant carries the initial burden of persuading the trial judge that there is no issue of material fact, but the plaintiff carries the burden of producing evidence of the essential elements *683 of a claim at the summary-judgment stage, as the plaintiff carries the burden of production at trial. Accordingly, the defendant carries no burden of production at the summary-judgment stage.)

. In Byrne, the plaintiff slipped and fell on an unidentified object — probably a cookie — in the ladies’ apparel department at Wal-Mart. Byrne, 877 So.2d at 464 (¶ 2). This Court held that the trial court did not err in failing *684 to apply the mode-of-operation theory, as Byrne had argued, stating: "Our state courts have yet to adopt the ‘mode of operation' theory, and we decline the invitation to set aside years of precedent in premises liability cases to adopt a new rule.” Id. at 467 (¶ 13).
Sullivan cites to this passage in Byrne in rejecting that plaintiff's mode-of-operation theory, contradicting Bonner's statement in her brief that Sullivan does not cite any authority for its rejection of the theory:
In Byrne, the Court concluded that "by accepting Byrne’s argument, we would be subjecting store owners who allow customers to walk around the store with food, toys, or other potentially 'dangerous objects’ to a strict liability standard.” This theory is simply inconsistent with the well-established principle that property owners owe invitees a duty of reasonable care to keep the premises in a reasonably safe condition, not to ensure that the premises are completely risk-free.
Sullivan, 946 So.2d at 832 (¶ 12) (internal citations omitted) (quoting Byrne, 877 So.2d at 467 (¶ 12)).

. The plaintiff in Byrne also cited Merritt as her sole Mississippi authority on her mode-of-operation argument, and her argument that she did not need to prove actual or constructive notice. Byrne, 877 So.2d at 466-67 (¶¶ 11, 13). This Court stated reliance on Merritt was misplaced, and we refused to extend Merritt's "limited holding” to Byrne's facts. Id. at 467 (¶ 12).

. We note Merritt preceded Sullivan.

. In Cobb, 661 P.2d at 76-77, the court reversed the trial court’s grant of summary judgment in favor of the grocery-store owner, holding there was a jury question regarding whether the store owner was aware that fallen grapes were a danger to customers; whether the store had an inadequate sweeping policy; and whether there was creation of a foreseeable, unreasonable risk by displaying grapes without a table guard or other such protection. The court noted that in Oklahoma, the "self-service marketing method has spawned a growing trend of cases that dispense with the traditional notice requirement in such business settings....” Id. at 76. Since the self-service methods necessarily create the dangerous condition, the owner "is deemed to have actual notice of the condition, eliminating the need for proof of notice.” Id.
Wollerman v. Grand Union Stores, Inc., 47 N.J. 426, 221 A.2d 513 (1966), is one of New Jersey’s seminal mode-of-operation cases. Capano v. Moran Foods, Inc., 2011 WL 134701, at *2 (N.J.Super.Ct.App.Div.). In Wollerman, 221 A.2d at 514, the plaintiff slipped and fell on a loosely packaged string bean in a supermarket. The New Jersey Supreme Court reversed the trial court’s dismissal of the case, and granted a new trial. Id. The court concluded: "When greens are sold from open bins on a self-service basis,” it creates a "likelihood that some will fall or be dropped to the floor.” Id. The court held that the "mode of operation” was likely to create a risk of injury because of the carelessness of either the customers or employees. Id. Therefore, the supermarket has the obligation to use reasonable measures promptly to discover and remove the hazard, even if there was no notice of the bean’s presence on the floor, to avoid an inference of fault. Id. at 514-15.
Additionally, Bonner cites Nisivoccia v. Glass Gardens, Inc., 175 N.J. 559, 818 A.2d 314, 315 (2003), another seminal mode-of-operation case from New Jersey, where the plaintiff slipped and fell on loose grapes as she approached the checkout line. Applying the Wollerman mode-of-operation rules, the court concluded the type of bags the grapes were packaged in "invited spillage.” Id. at 317. "Thus, the dangerous condition caused by stray grapes” at the checkout lanes "was a foreseeable risk posed by the store's mode of operation,” thereby entitling the plaintiff to an inference of negligence. Id. at 318.

. If Bonner’s argument is considered valid, this liability would of course extend to any round food, such as cherry tomatoes or olives.

. IPM stated its clean-up procedures are as follows. Once a spill is identified, an associate is to deter traffic so that no one falls in the area. Safety cones are to be placed in the area, and yellow safety cloths are to be placed on the spill as a deterrent, and to clean up the spill. Then it is to be mopped three times; the last with a dry mop or air drier.

.In discovery, IPM admitted to a grape being on the floor; McQueen provided a statement that he observed and picked up a grape on the floor, and Bonner stated that after she fell, she noticed a grape near her buttock along with a liquid substance.

. Incident reports of these accidents were attached to Bonner’s response to IPM’s motion for summary judgment. Bonner also cites these incidents in her reply brief as proof of IPM’s inadequate safety systems. In one incident, a patron was wearing flip-flops and slipped on a grape near the dessert and fruit station, but did not fall. In another incident, a guest fell on a grape near the fruit and salad bar of the buffet. In the last incident, a guest fell on preserves and crushed grapes at the salad bar. All three guests declined medical treatment.

. Bonner cites as analogous Karpinsky v. American National Insurance Co., 109 So.3d 102 (Miss.Ct.App.2012) (Karpinsky I). However, Karpinsky I was not settled law at the time Bonner's brief was filed on September 11, 2012, as a petition for writ of certiorari had been filed by the Appellees on July 27, 2012. The Mississippi Supreme Court granted the petition and ultimately reversed this Court’s ruling in Karpinsky v. American National Insurance Co., 109 So.3d 84, 86 (¶ 1) (Miss.2013) (Karpinsky II).
In Karpinsky II, the plaintiff slipped and fell on water outside of a store in a mall. Karpin-sky II, 109 So.3d at 86 (¶ 2). A witness provided a statement that the spill had been on the floor quite some time, but an incident report did not show when the store received actual notice of the spill, i.e., when it was reported. Id. at 90 (¶ 18). The circuit court granted summary judgment in favor of the defendants, but this Court, in a divided decision, reversed, stating there was a genuine issue of material fact regarding how long the spill had been on the floor due to these conflicting statements. Id. at 87 (¶ 7); Karpinsky I, 109 So.3d at 104 (¶ 12). The Mississippi Supreme Court, however, ruling in favor of the defendants, reversed this Court’s judgment, and held: the plaintiff did not establish when the defendants were notified of the spill; how long it took for them to respond to it once they had notice; or if they had a reasonable time to correct the dangerous condition. Karpinsky II, 109 So.3d at 92 (¶ 24).