# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-CA-00781-COA

SANDRA FELECIA DANIELS                                                    APPELLANT

v.

FAMILY DOLLAR STORES OF                                                     APPELLEE
MISSISSIPPI, INC.

| | |
|---|---|
| DATE OF JUDGMENT: | 06/08/2021 |
| TRIAL JUDGE: | HON. RANDI PERESICH MUELLER |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | LEONARD B. MELVIN III |
| ATTORNEYS FOR APPELLEE: | DOUGLAS BAGWELL |
| | NICOLE COLLINS HUFFMAN |
| NATURE OF THE CASE: | CIVIL - NEGLIGENCE (GENERAL) |
| DISPOSITION: | AFFIRMED - 06/28/2022 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE CARLTON, P.J., McDONALD AND EMFINGER, JJ.

### McDONALD, J., FOR THE COURT:

¶1.     Sandra Felecia Daniels (Daniels) appeals the Harrison County Circuit Court's grant of summary judgment in favor of Family Dollar Stores of Mississippi (Family Dollar) in a premises-liability action that Daniels filed after she slipped and fell in a Family Dollar store. On appeal, Daniels argues that summary judgment should not have been granted because genuine issues of material fact existed that presented questions for a jury concerning whether Family Dollar breached its duty of reasonable care.  Having reviewed the record and arguments by the parties, we affirm the circuit court's grant of summary judgment to Family Dollar.

## FACTS AND PROCEDURAL HISTORY

¶2. On June 15, 2019, around 7:30 p.m., Daniels visited Family Dollar in Gulfport, Mississippi. As Daniels approached the register to check out, she slipped on a liquid substance, believed by the circuit court to be urine, in front of one of the cash registers, causing her to fall and injure her knee.

¶3. Daniels filed a complaint against Family Dollar in the Harrison County Circuit Court on July 22, 2020, arguing that Family Dollar knew or should have known of the dangerous condition that the liquid substance created. Daniels further argued that Family Dollar was negligent in failing to warn her of the dangerous condition and negligent in failing to properly remove the substance from the floor.

¶4. On August 12, 2020, Daniels filed an amended complaint alleging that Family Dollar's negligence was the sole and proximate cause of her injuries. Additionally, the complaint stated that Family Dollar was careless, negligent, grossly careless, and reckless in its (1) failure to properly inspect or supervise the common areas in question, (2) failure to maintain the floors in a safe condition to ensure that Daniels would not be caused to slip and fall as a result of the water that existed and was known or should have been known to Family Dollar, (3) failure to properly inspect the floors where Daniels was caused to fall as a result of its not removing the substance, (4) failure to maintain the premises in good and safe condition, (5) failure to exercise the degree of care required under the circumstances, (6) failure to correct the dangerous condition, and (7) failure to exercise reasonable care to protect Daniels from injury on the premises.

¶5.     Family Dollar filed its answer to Daniels's amended complaint on September 8, 2020, asserting twenty-five affirmative defenses and denying all the claims and causes of action raised in Daniels's amended complaint.

¶6.     During her deposition, Daniels testified that on the day of the incident she did not see any Family Dollar employee spill anything on the floor nor did she know what the substance was.  According to Daniels, the substance felt very greasy and slippery.  Daniels further stated that she did not know how long the substance had been on the floor or where it came from.  Daniels also testified that she had no evidence to show that Family Dollar knew that the substance was on the floor before she slipped in it.  She admitted that there was nothing Family Dollar could have done to prevent the substance from being on the floor.

¶7.     The store's surveillance video of the relevant time period showed a single employee, Hunter Whited (Hunter), checking out customers.  At the beginning of the video, the floor in front of the cash register was clear of any substances.  Three customers lined up; as they moved up in line, one clearly stepped out of the frame of the camera to avoid a substance that appeared on the floor.  After the store employee checked out the last customer of that group, approximately thirteen seconds elapsed before Daniels approached and fell.  Approximately two minutes elapsed between the time the liquid substance appeared on the floor and Daniels's fall.

¶8.     In his deposition, Hunter[1] testified that at the time of the incident, he was an assistant store manager but often worked as a cashier during his shifts.  Hunter stated that on the day

---

[1] According to Hunter, he was fired in 2019 for reasons unrelated to this case.  At the time his deposition was taken, Hunter was employed elsewhere.

of the incident, he was working the late afternoon/evening shift. He stated that he could smell alcohol "coming off" a customer in line to check out. Hunter stated that he had never seen the customer before because he normally worked morning shifts. According to Hunter, the customer did not act impaired and kept quiet, but he could smell the alcohol coming off him "like he had been in a bar all day." Hunter said no one told him that this customer had urinated or that there was any liquid on the floor. Hunter stated that in accordance with the store policies, had he been told that something was on the floor, he would have shut down the register and directed customers to the other register. As Hunter and Daniels greeted one another, Daniels slipped and fell "fast and hard." Hunter went around the counter to make sure Daniels was alright and to see if there was anything he could do to help her. Daniels instructed Hunter to go get her sister out of her car. Hunter also testified that had an additional cashier been working that day, he would have been free to walk the store, and he may have been able to discover the liquid substance prior to Daniels's fall.

¶9.     Hunter stated that Family Dollar employees received training in the form of online classes to ensure that the employees stayed well-versed in cleaning and other store-related procedures. Family Dollar's "Store Safety Program" and an excerpt subtitled "Housekeeping" were produced and referenced during Hunter's deposition. Pursuant to the "Housekeeping" excerpt, employees were advised to identify any hazards and immediately eliminate them, make sure floors were kept clean and dry, and clean up any spills immediately. Hunter testified that he read through the brochure including the Housekeeping section when he became an assistant manager. When asked about prior incidents that had

4

occurred in the store, Hunter stated that he could not recall a time during any of his shifts where someone had slipped and fallen but that there were a few times where customers had come up to him to report spills. According to Hunter, he would get some cleaner to pick it up and would make sure to place "wet floor" signs all around the site so people would know to be careful in that area.

¶10. Rebeckah Hayes, the store manager, was also deposed. She said that if an employee or cashier was not occupied with a customer at the register, he or she would normally walk around the store to restock items, check for any spilled substances, or check for theft. However, Hayes was not at the store on the day the incident occurred and learned that something had happened from a friend that worked at the fire department. According to Hayes, no one had ever slipped and fallen at the store during her tenure.

¶11. On April 22, 2021, Family Dollar filed a motion for summary judgment in which it argued that Daniels's claims failed as a matter of law because Daniels had failed to show that Family Dollar created the hazard or knew or should have known that the hazard was on the floor for a sufficient time to remedy the situation.

¶12. On May 3, 2021, Daniels filed a response and memorandum brief in opposition to Family Dollar's motion for summary judgment and attached an affidavit of an expert, Eric White. White, who had years of experience in the retail safety field, opined that Family Dollar had a level of staffing that was sufficient to operate core essential functions such as operating the registers, but not sufficient to complete additional tasks such as monitoring for safety hazards and monitoring for individuals who were impaired to an extent that caused a

5

safety hazard to fellow shoppers. Family Dollar replied to Daniels's response and moved to strike the expert witness's affidavit.[2]

¶13. The circuit court heard argument on Family Dollar's motion for summary judgment on May 20, 2021. Family Dollar argued that the case boiled down to whether or not they had notice of the dangerous condition. Both parties conceded that there were two cashiers working at the time, including Hunter, who instructed Daniels to come to his cash register.[3] However, there was no deposition testimony or affidavit presented that Hunter knew of the liquid substance on the floor when he instructed Daniels to come to his register. Daniels argued that because the store was understaffed, Hunter was basically tied to the cash register even though he was an assistant manager and had made several complaints about the understaffing. Daniels argued that it was foreseeable that something like this would happen due to the understaffing of the store. Therefore, Daniels contended that Family Dollar did in fact have constructive notice and that it caused her injury by not having enough staffing.

¶14. The circuit court entered a final judgment on June 8, 2021, finding that Family Dollar was entitled to summary judgment and that there was no evidence to create a genuine issue of material fact in terms of any negligence on Family Dollar's part. In its judgment, the court stated that according to her deposition and discovery responses, Daniels did not know what

---

[2] At the end of the summary judgment hearing, the circuit court requested that the expert's affidavit be attached to the hearing transcript. Apparently it was considered by the court in its final judgment.

[3] The surveillance video only shows Hunter's register, and there is no apparent or explicit beckoning of Daniels to Hunter's register in the period before the urine appeared and up to the time Daniels walks on screen and falls in the urine.

the substance was that she slipped in, who put it there, or how long it had been there. In addition, Daniels admitted that she could not identify anything showing that the Family Dollar employee knew that the substance was on the floor. Therefore, the court found that the only evidence showing the substance on the floor was the surveillance video. The court also stated that the video showed a line of customers at the register when one seemingly urinated down his pants leg onto the floor leaving a puddle, and "[f]rom the time the puddle [was] visible on the video until Ms. Daniels stepped in it was approximately two (2) minutes." After considering these claims and the evidence, the court found that "even if Family Dollar failed to conduct reasonable inspections, there was simply no evidence to conclude that the problem had existed for such a duration that the jury may reasonably conclude that due care would have discovered it." The court also found that Daniels's allegation that Family Dollar failed to ensure, through their policies, that adequate inspections were made was not tenable because it required the court to apply a "mode-of-operation" theory, which has not been adopted in this state.[4]

¶15. Daniels appealed the circuit court's decision on July 8, 2021. On appeal, Daniels raises a single issue, whether genuine issues of material fact exist that presented questions

---

[4] Proponents of the mode-of-operation theory would eliminate the actual or constructive notice requirements under our current law. They argue that a business could operate in such a way that creates risks to customers. For example, in *Bonner v. Imperial Palace of Mississippi LLC*, 117 So. 3d 678, 683 (¶¶15-24) (Miss. Ct. App. 2013), the plaintiff argued that the manner in which Imperial Palace Casino served grapes (individually rather than on the stem) created a risk. Mississippi appellate courts have rejected this theory. *Id*. *See also Byrne v. Wal-Mart Stores Inc.*, 877 So. 2d 462, 467 (¶13) (Miss. Ct. App. 2003); *Hearn v. Square Prop. Invs. Inc.*, 297 So. 3d 292, 298 (¶24) (Miss. Ct. App. 2020). Likewise in this case, the circuit court correctly rejected this theory, which in essence creates strict liability.

7

for a jury as to whether Family Dollar breached its duty of reasonable care and is therefore liable to Daniels, a business invitee, for the significant damages suffered by Daniels.

## STANDARD OF REVIEW

¶16.    "A circuit court's grant of summary judgment is reviewed de novo." *Hearn v. Square Prop. Invs. Inc.*, 297 So. 3d 292, 295 (¶9) (Miss. Ct. App. 2020).  "Summary judgment is proper when 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Id*. (quoting M.R.C.P. 56(c)).  "The evidence is viewed in the light most favorable to the party opposing the motion." *Id*.  "[A]n adverse party may not rest upon the mere allegations or denials of her pleadings, but her response must set forth specific facts showing that there is a genuine issue for trial." *Id*.

## DISCUSSION

¶17.    Daniels argues that because she was a business invitee on Family Dollar's premises, Family Dollar breached the duty of care owed to her by failing to exercise reasonable care to keep its premises in a reasonably safe condition.  Under Mississippi law, "a business owner or operator owes a duty to the invitee to keep its premises in a reasonably safe condition and to warn of dangerous conditions which are not readily apparent to the invitee." *Bonner v. Imperial Palace of Miss. LLC*, 117 So. 3d 678, 682 (¶11) (Miss. Ct. App. 2013).  "However, business owners are not insurers against all injuries," and "[s]trict liability is not imposed on business owners in premises liability cases." *Id*.  In addition, "[m]ere proof of

8

the occurrence of a fall on a floor within the business premises is insufficient to show negligence on the part of the proprietor." *Id*. "Where the presence of the condition is due to the act of a third party, it must be shown that the defendant had actual or constructive notice of its existence." *Miller's of Jackson, Meadowbrook Rd. Inc. v. Newell*, 341 So. 2d 101, 102 (Miss. 1976).

> [I]n order for a plaintiff to recover in a slip-and-fall case, [she] must (1) show that some negligent act of the defendant caused her injury; or, (2) show that the defendant had actual knowledge of a dangerous condition and failed to warn the plaintiff; or, (3) show that the dangerous condition existed for a sufficient amount of time to impute constructive knowledge to the defendant, in that the defendant should have known of the dangerous condition.

*Bonner*, 117 So. 3d at 682 (¶12).

¶18.   We affirmed a summary judgment ruling when the proof of constructive notice was insufficient in *Hearn*, 297 So. 3d at 298 (¶25). Hearn filed a premises-liability action in the DeSoto County Circuit Court against Square Property Investments Inc. d/b/a Reed's Piggly Wiggly ("Piggly Wiggly") after she slipped and fell in what she believed to be a puddle of water. *Id*. at 294 (¶¶4-6). Piggly Wiggly filed a motion for summary judgment arguing that Hearn could not establish the essential elements of a premises-liability claim, and the circuit court ultimately granted Piggly Wiggly's motion. *Id*. at (¶¶6-8). On appeal, although Hearn argued that she provided evidence that a dangerous condition existed for a sufficient amount of time to impute constructive knowledge to Piggly Wiggly, in her deposition Hearn admitted that she did not know how long the puddle had been on the floor before she fell. *Id*. at (¶4). Hearn also claimed that there were footprints and shopping-cart tracks in the puddle, but neither the puddle, the footprints, or the shopping-cart tracks were evident from the store's

surveillance video. *Id*. at 296 (¶18). After reviewing the record, we found that Hearn had failed to present any evidence showing that Piggly Wiggly should have known that there was a puddle on the floor. *Id*. at 297 (¶19).

¶19. Similarly, in *Bonner*, 117 So. 3d at 680 (¶1), Bonner filed a negligence action against Imperial Palace of Mississippi LLC ("IPM") for injuries she sustained after she slipped and fell at the Back Bay Buffett in the Imperial Palace Casino, Resort, and Spa in Biloxi, Mississippi. *Id*. Bonner left her family's table to go to the buffet for a second plate of food when she slipped and fell. *Id*. at (¶3). While on the floor, she noticed a grape near a "water spill" approximately six inches in diameter. *Id*. Another buffet guest who saw Bonner after the fall said he saw a "smooched grape" and wet spot nearby. *Id*. at 681 (¶4). However, surveillance video showed a number of people walking through the area without incident and an employee even wiping the floor in the area with a cloth. *Id*. at (¶7). According to the video, no wet substance or a smashed grape could be seen on the floor where Bonner slipped; in fact, the floor in the area appeared to be quite clean. *Id*. IPM filed a motion for summary judgment, which the circuit court granted. *Id*. at (¶9). On appeal, Bonner argued that IPM had constructive knowledge of the danger based on the way it served the grapes on the buffet. *Id*. at 688 (¶37). Bonner further argued that "the dangerous condition, the grape and/or liquid substance, existed for a sufficient amount of time to impute constructive knowledge to IPM." *Id*. However, we found that there was no evidence in the record showing how long the grape and/or liquid substance had been on the floor before Bonner fell. *Id*. at (¶38). In addition, neither Bonner nor her family members could identify how long the

substances had been on the floor before she fell. *Id.* Affirming the circuit court's grant of summary judgment to IPM, we held that the evidence showed that IPM maintained its duty to keep the premises reasonably safe, and that Bonner did not present sufficient evidence that a dangerous condition existed. *Id.* at 689 (¶41).

¶20.    In this case, Daniels admitted during her deposition that on the day of the incident she did not see any Family Dollar employee spill anything on the floor, which would have showed that Family Dollar had actual notice of the spill. Daniels also stated that she did not know how long the substance had been on the floor before she fell. The surveillance video shows that the substance appeared on the floor in front of the register approximately two minutes before Daniels slipped and fell. In fact, one customer in the checkout line stepped around the substance. During that time, the surveillance video shows that Hunter was busy with customers until thirteen seconds before the fall, and there was no proof that he had notice of the substance on the floor. Daniels failed to provide any evidence that Family Dollar was responsible for the substance being on the floor, or that Family Dollar had constructive knowledge of its presence. Therefore, we find that the circuit court did not err in granting summary judgment in favor of Family Dollar.

¶21.    Daniels also argues that because Family Dollar was understaffed, the employees were unable to act in a timely manner to prevent Daniels's injury. Daniels fails to cite any authority in support of her argument. The Mississippi Supreme Court has held that appellate courts are "not bound to address assertions of error where a party fails to cite caselaw in support of their argument." *In re Johnson*, 312 So. 3d 709, 712 (¶17) (Miss. 2021).

11

Nevertheless, Daniels's argument raises a "mode-of-operation" theory of negligence. Under the mode-of-operation theory, the plaintiff usually argues that "when an owner of a[n] . . . establishment has actual notice that his mode of operation creates certain risks of harm to customers, and those risks are foreseeable, it is not necessary for the plaintiff to prove notice of the hazard that caused the injury." *Bonner*, 117 So. 3d at 683 (¶16). However, Mississippi appellate courts have consistently declined to adopt this theory, and we are bound by those holdings. *See Byrne*, 877 So. 2d at 467 (¶13); *Bonner*, 117 So. 3d at 685 (¶23); *Hearn*, 297 So. 3d at 298 (¶24). In this case, the circuit court correctly rejected Daniels's argument that the mode-of-operation theory was applicable.

## CONCLUSION

¶22. Because we find no error by the circuit court in granting summary judgment to Family Dollar, we affirm the circuit court's judgment.

¶23. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**