IRVING, J„
for the Court.
¶ 1. John Mozingo Real Estate & Auction, Inc. (Mozingo) sued National Auction Group, Inc. (NAG),[1] alleging intentional interference with either an existing or prospective contract. The court granted NAG’s motion for summary judgment. Aggrieved, Mozingo appeals and asserts that the court erred in (1) granting summary judgment and issuing “Findings of Fact and Conclusions of Law;” (2) striking the affidavits of John Mozingo (Mr. Mozin-go), T.J. Wills,[2] and Charles Allen; and (3) exhibiting bias in favor of NAG. Mozingo also requests that we not only reverse and remand, but also order transfer of the case to a different circuit court judge “who has no ties of friendship or professional association with the attorneys and judges implicated as engaging in the tortious acts upon which the Complaint is based.”
¶ 2. Finding no error, we affirm.
FACTS
¶ 3. On November 5, 1998, a partition proceeding was begun in a Harrison County Chancery Court. The partition sought to divide a large piece of property in Biloxi, which was owned by twenty-five different individuals. The owners eventually contracted with NAG to sell the property at a public auction. On June 3, 2000, the property was auctioned and sold for around $5.7 million.[3] Thereafter, stipula *144 tions agreeing to the terms of the auction and sale were signed by each of the twenty-five owners of the property. On August 10, 2000, final judgment was entered in the partition action approving the auction and sale of the property.
¶ 4. Mozingo claims that it had an oral contract with one of the owners, John Mil-ner, to auction the property. Mozingo claims that it had worked toward the auction for five years prior to the auction by NAG. Mozingo theorizes that Milner chose to give the contract to NAG because Moz-ingo refused to conduct the auction as ah absolute auction. Mozingo also strenuously contends that the way the auction was conducted by NAG was illegal and unethical, and has filed several administrative actions against NAG as a result. All of these complaints have been dismissed by the agencies and organizations with which they were filed. On April 2, 2002, Mozingo filed a complaint against NAG, asserting that NAG had interfered with its contractual rights. The primary thrust of Mozin-go’s complaint is that NAG, lawyers, and judges conspired to steal Mozingo’s contract to auction the property.
¶ 5. Mozingo’s initial request for discovery went unanswered, and a motion to compel discovery was filed. NAG’s attorney at the time of the request eventually withdrew and was replaced by NAG’s current counsel. When it came to the attention of the current counsel that the discovery requests had not been answered, discovery responses were filed. This filing occurred very shortly before the hearing on the summary judgment motion. In the discovery, NAG simply refused to answer many of the questions, asserting that “[t]he present action is an impermissible collateral attack on the final orders of the chancery court approving the auction sale.... [N]or is the information sought by this interrogatory calculated to lead to the discovery of admissible evidence.” No further motion to compel or expand on the discovery was filed by Mozingo, although its attorney complained about the quality of the discovery during the summary judgment hearing.
¶ 6. In order to meet its burden for summary judgment, NAG attached numerous documents to its motion for summary judgment (all of which were provided to Mozingo as part of discovery). Mozingo filed three affidavits in support of its claim, and very little else in the form of evidence. After the hearing, NAG filed a motion to strike the affidavits, which the court granted. The summary judgment hearing was held on August 11, 2003. On September 29, 2003, the court entered findings of fact and conclusions of law granting summary judgment to NAG. A final judgment dismissing Mozingo’s claims was entered on October 2, 2003.
¶7. After final judgment was entered, Mozingo filed a series of pleadings, including a motion requesting that the court reconsider its judgment. On October 30, 2003, NAG filed a cross-motion for sanctions against Mozingo and its attorney. On August 2, 2004, the court held a hearing on all the outstanding motions. The same day, the court entered an order affirming summary judgment. An order denying sanctions and all other pending motions was entered on August 10, 2004. Mozingo then gave its notice of appeal, and *145 NAG responded with notice of its cross-appeal.
ANALYSIS AND DISCUSSION OF THE ISSUES

(1) Propriety of Summary Judgment and Conclusions and Findings

¶ 8. When reviewing a grant of summary judgment, our standard of review is de novo. McMillan v. Rodriguez, 823 So.2d 1173, 1176-77(¶ 9) (Miss.2002). We will construe the record in the light most favorable to Mozingo, since summary judgment was entered against it. Id. We affirm summary judgment only where the non-moving party is unable to present any genuine issue of material fact. Id. The burden is on NAG to show that there is no genuine issue of material fact. Id.
¶ 9. Despite the heavy burden that a party moving for summary judgment faces, we find that NAG met that burden in this case. Mozingo argues that summary judgment was improper because the court incorrectly stated multiple facts in its findings. We are unswayed by this argument, since none of the facts complained of by Mozingo bear any relevance to its tort claims. Mozingo also contends that the court applied incorrect legal standards in its conclusions of law. Mozingo specifically alleges that the trial court did not adequately address whether there was a genuine issue of material fact when it dismissed Mozingo’s claims.
¶ 10. We find that the court made adequate findings that there was no genuine issue of material fact sufficient to support a denial of summary judgment. The judge specifically detailed a series of facts that he considered to be undisputed, including (1) that there was no signed auction contract between Mozingo and the owners, that the order authorizing the sale for the partition action had already become final, and that Mr. Mozingo had sent a letter to the National Auctioneers Association (NAA) wherein he admitted that “he had never been hired by the seller and did not bring or register any client as a purchaser at the auction sale.” The court also pointed out that Mozingo had offered no evidence whatsoever concerning how NAG had interfered with its alleged contract with the property owners.
¶ 11. As correctly noted by the court, NAG supported its summary judgment motion by submitting “numerous eviden-tiary exhibits and pertinent excerpts from the record in the Partition Action.” By contrast, the court found that Mozingo had “responded with conclusory affidavits which the court has stricken because the representations made therein conflict with prior representations to the court....”
¶ 12. We note that the court created confusion by spending a significant amount of time delving into the irrelevant issue of whether res judicata or collateral estoppel would bar Mozingo from attacking the partition action. Mozingo’s claims before the court involved only torts for intentional interference; the lengthy discussion of the partition order and the various administrative decisions bore no relevance to those claims whatsoever. However, we find that the court still presented adequate findings and conclusions to support its decision that Mozingo had not shown any issue of material fact concerning its tort claims. Other than a few self-serving affidavits which were ultimately stricken by the court, Mozingo presented nothing but conjecture to support its tort claims. Various theories were espoused, both below and in Mozingo’s appeal briefs, but no evidence has been presented to support any of these claims.
¶ 13. Even the most basic of facts that Mozingo alleges is unsupported by the record. For example, Mozingo claims that it *146 “and [its] staff dedicated a tremendous amount of time and money to prepare for the auction.... Among other things, Mr. Mozingo twice leased a helicopter to take aerial photographs of the property.” Both of these claims should be easy to prove by presenting the affidavit or testimony of one of the “staff’ who worked on the auction, but no such employee was ever presented on the record. No receipt was provided by Mozingo showing that it had paid for the use of a helicopter once, let alone twice. Not a single record was produced showing any contact between Mil-ner and Mozingo during the five years it claimed it worked on preparing for the auction of the property and “advised Mr. Milner in person and by telephone of the work ... several times almost every week.”
¶ 14. The basis of Mozingo’s intentional interference claims is that Faye Craven, who worked for NAG in some capacity, learned of the auction from Mr. Mozingo and informed NAG that it should “steal” the auction. There is no evidence presented that any of the conversations Mozingo alleges happened actually took place. Nothing but conjecture is offered to substantiate this link between its alleged contract and NAG. As an example of the fantastic nature of many of Mozingo’s statements, it claims in its brief that Mr. Mozingo and his attorney “met with [a Special FBI Agent] at the FBI office in Gulfport. Mr. Meadows’s and other individuals’ names were raised.... Counsel, in the spirit of full disclosure, revealed this meeting to the lower court during the hearing on the Motion for Summary Judgment.” In a footnote, Mozingo claims that this disclosure “was made in open court on the record and should appear in the Transcript at T 27-28, but for reasons unknown to counsel the disclosure does not appear in the official transcript. This omission raises grave issues.” Mozingo further claims that Milner and his attorney entered into “secret negotiations with NAG” and “explained [that] a verbal contract had already been formed with the Appellant, and the Appellant had worked five years preparing for the auction.... [NAG] agreed simply to ignore the Appellant’s contract (or prospective contractual relationship), and developed plans to avoid the ramifications of conducting an absolute auction.... ”
¶ 15. In addition, we note that, as acknowledged in its brief, Mozingo would have a very difficult time proving interference with an existing contract. Simply put, there is virtually no evidence that. Mozingo had a contract with Milner. The only evidence to the contrary is its own assertions, which contradict Mr. Mozingo’s previous statements to the NAA. In his letter to the NAA, Mr. Mozingo stated that he was aware that he had no contract with Milner, and had never had a contract because whenever he pressed Milner for a contract, Milner refused: “I attempted several times to get [Milner] to sign a contract, but as many times as I tried, he explained that there were approximately twenty-five heirs to deal with, and that his signature would not carry any weight and that it would take court action to get all of the heirs to agree on the sale.” Mr. Mozin-go stated in the same letter that he “inquired of [Milner] what I had done wrong and why they had selected an auction company who had never before conducted even one auction in our area....” These statements indicate that Mr. Mozingo and his company clearly understood that they had no contract with Milner, because Milner had refused to enter into a contract with them.
¶ 16. Therefore, the only claim that Mozingo can rely on is that of intentional interference with a prospective con *147 tract, which it admits is the same as interference with business relations. However, Mozingo still has not provided any evidence sufficient to establish a genuine issue of material fact regarding this claim. No actual evidence whatsoever was presented by Mozingo showing that NAG interfered with its business relations with Milner and the other owners, or even showing that NAG knew about Mozingo’s alleged discussions with Milner.
¶ 17. In short, the grant of summary judgment was proper. No genuine issue of material fact was raised by the evidence produced by Mozingo.

[2] Sinking of the Affidavits

¶ 18. In its second point of error, Mozingo claims that the court erred in striking the affidavits presented by Mr. Mozingo, Allen, and Wills. In its order striking the affidavits, the court stated that it was doing so because the affidavits “flatly and materially contradict the records and prior related proceedings.” Mississippi courts have indicated that a motion for summary judgment cannot be defeated “by submitting an affidavit which directly contradicts, without explanation, his previous testimony.” Foldes v. Hancock Bank, 554 So.2d 319, 321 (Miss.1989) (citing Ken-nett-Murray Corp. v. Bone, 622 F.2d 887, 894 (5th Cir.1980)).
¶ 19. In striking Mozingo’s affidavit, the court stated that “Mr. Mozingo is judicially estopped from taking a position in the present litigation which is directly contradicted by his prior written and testimonial submissions to the NAA, and the actual content of the court record in the Partition Action.” Mozingo contends that the affidavit was not properly stricken under the reasoning of Foldes because the prior inconsistent statement was not given “in the depositions and Interrogations [sic] submitted in the same case.” However, after examining Foldes, we can find no requirement that the “testimony” referred to be limited to depositions and other documents from the same proceeding. Mozin-go then retreats and argues that “[a]t most, any prior inconsistent statements must be found in litigation. Mr. Mozingo was not in litigation before the Association.”
¶ 20. The letter wherein Mr. Mozingo stated that he had no contract with Milner or the other owners was a letter written by him that was intended to support an administrative complaint against NAG. No assertion has been offered by Mozingo to show that the letter was not written by Mr. Mozingo, or was not written with the intent of pursuing an administrative action against NAG. Instead, Mr. Mozingo’s statements to the NAA are explained by using the following example: “Counsel’s Mother gave him a gold pocket watch when he was twenty years old, yet it was stolen when he was twenty-two years old. Counsel can say he had no gold pocket watch when he was twenty-five years old, and not contradict the fact [that] he had one when he was twenty. Matters must be taken in context. The Appellant’s contract had been stolen by the Appellees so his statement was not contradictory.” This example might be relevant, except for the fact that the letter clearly indicated that Mozingo had never had a contract with the owners of the property, because Milner had told Mozingo that he did not have the authority to contract on behalf of the other owners.
¶ 21. Although we are not certain that the court pursued the proper remedy in striking Mr. Mozingo’s affidavit,[4] we *148 find that the affidavit could not have been considered in denying the motion for summary judgment, and therefore, the striking of the affidavit is moot. Mississippi case law is clear that summary judgment cannot be defeated by an affidavit that is in contradiction with the previous sworn statements of a party. Even if his letter to the NAA cannot be considered sufficient to require the striking of his affidavit, Mr. Mozingo’s sworn and recorded statements to the NAA are sufficient to disqualify his affidavit, especially when taken in context with the letter written to the NAA. In his testimony before the NAA, Mr. Mozingo, when discussing his lack of protest at the actual auction of the property (which he attended with his son), stated that “[w]e had not been hired by the seller.” In other words, Mr. Mozingo admitted that he and his company had no contract with the owners of the property. Mr. Mozingo also stated that he had “competed for this sale” and lost to NAG, who was conducting the auction. Therefore, the affidavit submitted to the court contradicted Mr. Moz-ingo’s own statements to the NAA at his grievance hearing, and therefore could not be sufficient to defeat a motion for summary judgment. Even if the judge was in error for striking the entire affidavit, he could not have found that the motion for summary judgment could be overcome by the affidavit, and therefore, any error caused by the striking of the affidavit was harmless.
¶ 22. Mozingo argues that Wills’s affidavit was also stricken improperly simply because Wills “was not a party in the instant case.” Mozingo claims that Wills only signed the stipulation approving the sale by NAG because “Mr. Meadows told Mr. Wills he would be sued if he did not sign the stipulation, the substance of which was not even clear to Mr. Wills.” Mozingo presents no evidence whatsoever for this claim, and Wills’s affidavit makes no mention of any coercion on the part of Meadows.[5] Therefore, Wills’s affidavit was directly contradicted by his previous sworn stipulation agreeing to the sale of the property, and was properly disregarded by the court. As with Mr. Mozingo’s affidavit, regardless of whether the court should have stricken the affidavit in its entirety, the self-serving and contradictory nature of the affidavit entitled the court to disregard it when granting summary judgment. Therefore, any error in striking the affidavit was harmless.
¶ 23. Mozingo also claims that the court erred in striking the affidavit of Charles Alen, its attorney. The basis for Mozingo’s claim appears to be that it was unhappy with the discovery provided by NAG. Alen’s affidavit was submitted as part of a Rule 56(f) motion. Rule 56(f) of the Mississippi Rules of Civil Procedure states:
Should it appear from the affidavits of a party opposing the [summary judgment] motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such order as is just.
*149 Allen filed his affidavit because, at that time, no discovery answers had been provided to Mozingo. Within days after the filing of the affidavit, discovery responses were filed by NAG.[6]
¶24. Allen’s affidavit stated that his client had “received no response” to discovery requests and pointed out that there was “currently a Motion to Compel Discovery pending before this Court.” As with the affidavits of Mr. Mozingo and Wills, we are not convinced that the court was correct in striking the affidavit in its entirety. However, since the affidavit was filed to address the lack of discovery provided by NAG, and NAG thereafter produced discovery, the affidavit became moot and irrelevant. Only harmless error could result from the striking of the affidavit after discovery was provided by the defendants. After NAG filed discovery responses, the ball was in Mozingo’s court to compel further discovery or supplementary answers to the discovery. No such motion appears in the record, nor does Mozingo maintain that one was made. The original motion to compel discovery was answered when NAG filed its discovery responses. If Mozingo was unhappy with those responses, additional motions to compel or supplement had to be filed in order for error to arise from the quality of the discovery.

(3) Bias on the Part of Judge Terry

¶25. In its final point of error, Mozingo claims that the decision of the court must be reversed because of bias on the part of Circuit Court Judge Jerry 0. Terry, who oversaw the proceedings. This claim of error appears to rest on the assertions of Mozingo and its counsel that Judge Terry was somehow involved in a scheme with the defendants to cheat Moz-ingo out of the contract to auction the property. The best argument Mozingo provides is that “the court” requested that NAG’s attorneys draft and submit findings of fact and conclusions of law without asking Mozingo’s attorney to do the same. No evidence is offered that Judge Terry himself requested that the defendants draft the document, only that “the court” had contacted the defendants. We find that this ex parte contact was potentially unethical. A draft should have been requested of both parties, and both parties should have been made aware that there had been a request for such a draft. However, the ex parte contact does not rise to the level of reversible error, and does not require reversal of the court’s summary judgment determination. We also note that no motion requesting recusal was ever filed by Mozingo.
¶ 26. Mozingo’s final point of error is ' rejected. Since we find no reversible error in the grant of summary judgment, we do not, as requested by Mozingo, reverse and remand to a different court.

Cross-Appeal

¶ 27. In its cross-appeal, NAG argues that the circuit court abused its discretion by not awarding it sanctions against Mozingo. According to NAG, “Mozingo’s own written and testimonial admissions that his company ‘had no contract’ establish that the present action as well as Mozingo’s administrative complaints were filed for improper purposes, namely to harass and subject Mozingo’s legitimate business competitors and the competitors’s representatives to unnecessary burden and expense.” Consequently, NAG maintains that the court should have awarded it attorney’s fees and costs under *150 Mississippi Code Annotated section 11-55-5(1) (Rev.2002).
¶ 28. Section 11-55-5(1) states:
Except as otherwise provided in this chapter, in any civil action commenced or appealed in any court of record in this state, the court shall award, as part of its judgment and in addition to any costs otherwise assessed, reasonable attorney’s fees and costs against any party or attorney if the court, upon the motion of any party or on its own motion, finds that an attorney or party brought an action, or asserted any claim or defense, that is without substantial justification, or that the action, or any claim or defense asserted, was interposed for delay or harassment, or it finds that an attorney or party unnecessarily expanded the proceedings by other improper conduct including, but not limited to, abuse of discovery procedures available under the Mississippi Rules of Civil Procedure.
An action, claim, defense, or appeal is without substantial justification if “it is frivolous, groundless in fact or law, or vexatious, as determined by the court.” Miss.Code Ann. § ll-55-3(a) (Rev.2002).
¶ 29. “We review the grant or denial of attorney’s fees under an abuse of discretion standard.” In re L.D.M., 872 So.2d 655, 657(¶ 7) (Miss.2004). “In the absence of a ‘definite and firm commitment that the court below committed a clear error of judgment in the conclusion it reached upon weighing of relevant factors,’ the judgment of the court’s imposition of sanctions will be affirmed.” Wyssbrod v. Wittjen, 798 So.2d 352, 357(¶ 17) (Miss. 2001). “Likewise, a trial court decision to award attorney’s fees pursuant to the Litigation Accountability Act [§ 11-55-5(1) ] is subject to the abuse of discretion standard of review.” Id. (citing Terex Corp. v. In-galls Shipbuilding, Inc., 671 So.2d 1316, 1324 (Miss.1996)).
¶ 30. Although we find that the trial court properly granted summary judgment, we cannot say that Mozingo’s claims were completely without substantial justification, as within the statutory definition of the phrase. Obviously, the trial court found the same to be true because it refused to award NAG sanctions. From the record before us, we also cannot say that the trial court committed a clear error of judgment in refusing to impose sanctions against Mozingo. Therefore, we find that the court did not abuse its discretion.
¶ 31. We also note that NAG’s cross-appeal contends that the trial court should have awarded sanctions under Rule ll.[7] However, NAG failed to present an argument for the propriety of sanctions against Mozingo under Rule 11(b). Williams v. State, 708 So.2d 1358, 1360-61(¶ 12) (Miss. 1998). As such, we decline to discuss the appropriateness of sanctions under the Rule in this opinion.
¶ 32. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY GRANTING SUMMARY JUDGMENT IS AFFIRMED AS TO DIRECT APPEAL AND CROSS-APPEAL. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT/CROSS-APPELLEE.
KING, C.J., LEE AND MYERS, P.JJ., SOUTHWICK, CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.

.Mozingo actually sued NAG, Eddie Haynes, and James Jenkins. In the interest of clarity, we refer to the defendants collectively as NAG throughout this opinion.

.Mr. Mozingo is the owner of Mozingo Real Estate and Auction, Inc. Wills is one of the tenants-in-common who owned the property auctioned by NAG.

.NAG and Mozingo disagree as to the esti *144 mated value of the property. NAG maintains that the $5.7 million was well above the estimated value of the property. Mozingo claims that the property had been appraised to be worth as much as $30 million. No official estimate appears in the record from either party, but the court did indicate on the record that the sale price ($5.7 million) was above the estimated value of the property as given to the court.

. Mississippi case law provides a dearth of guidance on the striking of affidavits. Ulti *148 mately, the decision of whether to strike an affidavit lies within the sound discretion of the trial court. We are not certain that the court did not abuse this discretion in striking Mozingo's entire affidavit. However, we find that any error on the part of the court was harmless and moot, as discussed above.

. Meadows is a Mississippi attorney who worked on the partition and subsequent auction of the property sold by NAG.

. NAG’s initial counsel apparently never filed answers to Mozingo’s discovery requests. The filing of this affidavit alerted NAG’s counsel that discovery had never been given, a deficiency that was promptly corrected.

. Rule 11(b) of the Mississippi Rules of Civil Procedure permits the court to award reasonable expenses and attorney’s fees against a party or his attorney, or both, if the court finds that pleadings, motions, or other papers were filed that were frivolous, for the purpose of harassment or delay, or to increase the cost of litigation.