# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-CA-00928-COA

**JOHN FAIRCHILD**                                                     **APPELLANT**

v.

**KS OCEAN SPRINGS REAL ESTATE LLC,**                   **APPELLEES**
**THREE R'S LLC, AND KEITH'S SUPERSTORE**
**89 LLC**

| | |
|---|---|
| DATE OF JUDGMENT: | 08/01/2023 |
| TRIAL JUDGE: | HON. ROBERT B. HELFRICH |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | PHILIP CAREY HEARN |
| | CHARLES CASSIDY COLE |
| ATTORNEYS FOR APPELLEES: | ROBERT P. THOMPSON |
| | ERIC REYNOLDS PRICE |
| | MACKENZIE NICOLE ELLIS |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 02/25/2025 |
| MOTION FOR REHEARING FILED: | |

**BEFORE CARLTON, P.J., McDONALD AND McCARTY, JJ.**

**McDONALD, J., FOR THE COURT:**

¶1. John Fairchild appeals the Forrest County Circuit Court's grant of summary judgment in favor of KS Ocean Springs Real Estate LLC and Keith's Superstore 89 LLC ("Keith's"), which are owners of a gas station, and Three R's LLC ("Three R's"), which is an owner of a McDonald's located on the gas station site where Fairchild slipped and fell. Because the circuit court struck an affidavit of Fairchild's only witness who said that he had told employees hours before the fall about a discarded hamburger on the sidewalk, the court found Fairchild had failed to prove that Keith's and Three R's created the allegedly

dangerous condition or had notice of it prior to Fairchild's fall.  On appeal, Fairchild argues that the circuit court erred in striking the witness affidavit and in granting summary judgment.  Having reviewed the record and arguments of counsel, we affirm the judgment of the circuit court.

**Facts and Procedural History**

¶2.     At 10:58 a.m. on October 14, 2019, Fairchild fell at the entrance of a combined gas station and McDonald's restaurant in Ocean Springs.  Keith's owned the gas station portion, and Three R's operated the McDonald's.  Fairchild contended that he was meeting a friend at Keith's, but after he walked across the parking lot and onto the sidewalk, he slipped on a discarded hamburger.  This caused him to first fall into an ice storage box and then backwards, hitting his head on the pavement.

¶3.     One of Keith's employees working that day, Anita Pintor, saw Fairchild fall.  She assisted him and prepared a "Customer Incident Report."  In the report, Pintor wrote, "I went and helped him get up, [and] he said his knee went out from under him.  Shoes made me fall and my knee went out."  Pintor reported that she checked the area where Fairchild had fallen and found no broken concrete or debris.  She also noted that the parking lot had been cleaned that day.  In addition to the incident report, Pintor prepared a written statement of the event, saying:

> I was at the register and saw a man fall outside on the sidewalk.  I ran outside
> and ask[ed] if he was ok[.] He said yes [and] I asked what happened.  He said
> "I think it was these shoes cause this is the second time I fell."  I helped him
> up[,] he then said I think my knee went out.  Look at it.  He had scrap[e]s on
> his knuckles but was not hurt any where else.  He never lost consciousness.
> The pavement was clean[ed] by McDonalds that morning.  There was nothing

2

on the sidewalk. When I helped him up he walked into the store and ordered food from McDonalds and sat done [sic] and ate. Then got up and left. I told him I needed him to fill out an incident report but he was in a hurry and came back the next day to do it.

¶4. There was a portion of the report for Fairchild to complete. Pintor said Fairchild told her that he was in a hurry and would return the next day to complete it. Fairchild, however, stated that Pintor tried to "strong-arm" him into filling out the accident report immediately, and he refused to do so because "he was pained and waiting for an ambulance." The next day, October 15, 2019, Fairchild returned and wrote his version on the incident report, stating that he was

> walking to [the] side door (faces Big Ridge) when I neared the curb section of the pk [parking] lot, I got my foot onto [the] cement ground (concrete) that separates [the] sidewalk to [the] parking lot. When I placed my foot on this section, I was tossed forward and fell onto the cement walk, near [the] door. I received numerous damages to my body. After I regained consciousness, I went over and there was [were] pickles, egg, small debris, I stepped on.

Fairchild said that Pintor told him that the insurance company had taken possession of the video footage of the incident.[1] Pintor was later deposed and verified what she wrote in her statement and in the report. She also said that another Keith's employee, Selina Fuller, also witnessed Fairchild fall.

*Complaint and Discovery*

¶5. Nearly two years later, on September 7, 2021, Fairchild filed suit in the Forrest County Circuit Court against Keith's and Masker Management LLC. Three R's was later substituted for Masker Management by agreed order. Fairchild alleged that he suffered injuries when

---

[1] No video footage was mentioned by the parties after this first instance and only a reference to it was made. No video was ever produced.

he fell on a "slippery discarded hamburger" on the defendants' premises. During discovery, Fairchild claimed injuries of a left rib fracture, lower spine and disc damage, and brain and neurological damage, including an inoperable artery blockage.

¶6. On November 12, 2021, Three R's propounded interrogatories to Fairchild, asking him, among other things, to describe the "slippery, discarded hamburger," how long he contended it had been there, and to identify any person with knowledge of the incident. In his January 18, 2022 interrogatory answers, Fairchild stated that the "food substance [the discarded hamburger he slipped on] was old, not fresh, and had already began (sic) to spoil and change colors," and he referred to "photos taken." Fairchild provided only one photo of a piece of a hamburger bun next to a McDonald's receipt dated October 13 (the day before the fall), and it reflected a purchase of a chicken sandwich, not a hamburger. However, the metadata from the digital photograph of the hamburger bun, which Fairchild also provided, indicated that the photo was taken at 3:23 p.m. on October 15, which was the day *after* Fairchild's fall. The only other photo Fairchild provided was of his scraped knuckles, and its metadata showed it was taken on October 14.

¶7. Fairchild was also asked in the interrogatories whether he had ever been convicted of or pled guilty to any crimes. He answered, "No." Concerning his injuries and prior accidents, Fairchild indicated that he had filed for worker's compensation benefits in 1999 in Ohio when "he was struck by a flying drawer to the neck." He said the case was settled, and he returned to work. In his discovery answers, Fairchild detailed his injuries from his fall at the Keith's and Three R's location and named all his treating physicians. He also

4

listed all medical treatment and physicians he had prior to the accident. At the time of his fall, Fairchild was retired and on Medicare.

¶8. In discovery, Fairchild was asked to identify any witnesses to the fall. Fairchild responded that an "acquaintance" of his saw "some of the events," but this witness was a Vietnam War veteran with no fixed address. Thus, Fairchild said he did not know this individual's address or even his full name.

*Motions for Summary Judgment*

¶9. On February 23, 2022, Three R's filed a motion for summary judgment, and on March 28, 2022, Keith's did the same. Both argued that Fairchild had failed to present sufficient credible proof of a dangerous condition (other than a photograph of a hamburger bun with metadata showing the photo was taken the day *after* the fall) and, further, that Fairchild had failed to present any proof that employees of Keith's or Three R's had created the alleged dangerous condition or had any actual or constructive notice of it. The motions were originally set for a hearing on April 22, 2022; but on that day, Fairchild's attorney withdrew, and Fairchild was given sixty days to find a new attorney.

¶10. In July 2022, four months after the original motions for summary judgment were filed, Fairchild's new counsel presented Keith's and Three R's with an affidavit of Jeff Conyers, signed on June 27, 2022. In it, Conyers stated that he lived in Van Cleave, Mississippi, and that he had witnessed the events "immediately before and/or after John Fairchild's fall" at Keith's. Conyers said he was there that day to meet Fairchild and then go play tennis or "maybe fish." During his visit on the day of Fairchild's fall, which Conyers identified as

5

October 13, 2019, Conyers said he saw, at the entrance door,

> old spilled food and a wrapper on the sidewalk. There was meat, condiments and bread. When I observed it later that morning, after the fall, I saw it was turning green and grey. It had been there at least 4 hours, as I saw it there, in [the] same spot, at 7:30 a.m. that day when I went to get cigarettes.

He said he went to Keith's up to three times a day, and on the day of the fall, "the walk was a mess and food and debris was by the door and on the curb." Conyers continued that "the spill, the horrid grease and condiments, cause[d] his [Fairchild's] fall" and that the women on duty had tv cameras at their counter and could see the food but did nothing to clean it up.

¶11.   After receiving this affidavit, Keith's and Three R's deposed Conyers in September 2022.  Conyers said that he arrived at Keith's at 11:35 a.m. to meet Fairchild, and saw Fairchild getting into a mini-van taxicab.  Conyers saw Fairchild bleeding from the head. Conyers said Fairchild gave him his phone and asked him to take a picture of the discarded hamburger.  Conyers added that when he first saw the discarded hamburger that morning at 7:30, he told the cashier about it.

*Fairchild's Responses to the Motions for Summary Judgment*

¶12.   On October 12, 2022, Fairchild filed his response to the Keith's and Three R's motions for summary judgment.  Fairchild attached Conyers's affidavit and excerpts of Conyers's deposition.  In his deposition, Conyers said that he and Fairchild had planned to go fishing. But Fairchild had already gone into McDonald's to get a burger before Conyers arrived.  "When I pulled up, [Fairchild] was getting into the cab to go to the hospital because he had slipped on a hamburger that I told them - - because I was there like 7:30 that morning."  So Conyers was not present when Fairchild fell, but he said he saw Fairchild

6

bleeding from the back of his head and on his elbows. Conyers said that Fairchild gave him his cell phone as well as Fairchild's receipt from his purchase of a chicken sandwich and asked Conyers to take a picture of the hamburger on the sidewalk. Conyers said he put Fairchild's receipt by the burger to show the size of it. Fairchild gave Conyers his receipt from his purchase that day and asked Conyers to take a picture with the receipt in it "for reference."

> A. The only thing he did was hand me his cell phone and the receipt from it, told me to go take a picture. So I sat it down, the receipt, next to it for a reference to size, took a picture of it, took it back and gave him his phone and his receipt back.
>
> Q. Ok. And did he tell you that was his receipt from that day?
>
> A. Yeah.

At the time he took the picture, Conyers was not sure why he was doing so. Conyers said he did not know that Fairchild had slipped on the hamburger until he visited Fairchild later that evening. However, when Fairchild told him what he had slipped on, Conyers realized it was the same hamburger he had reported to Keith's employees earlier that morning. Conyers said he had been there at 7:30 a.m. to buy cigarettes and a drink, and he told employees about the hamburger on the ground outside. Conyers stated that the hamburger was still there at 11:35 a.m. He described the bun as dried out, "kind of crusty," and not greasy. Conyers also said that Fairchild had his walking cane with him that day when he fell. Conyers said he never personally ate at McDonald's, and he confirmed that he did not speak to any McDonald's (Three R's) employees that day.

*Three R's and Keith's Replies to Fairchild's Response*

7

¶13.   Three R's replied to Fairchild's response to its motion for summary judgment. It pointed out that although Fairchild answered interrogatories saying that he had never been convicted of a crime, Fairchild was in fact "an elderly convicted felon with a history of substance abuse." Three R's attached Fairchild's criminal records from Kentucky from 1990 to 1997, which showed that on January 11, 1991, Fairchild pleaded guilty to ten counts of obtaining drugs by fraud. He was sentenced to two years on each count to run concurrently. Later in 1994, Fairchild was convicted of receiving stolen property and sentenced to five years, with one year to serve and four years of probation. In 1997, he violated that probation by being convicted of a DUI, failing to report, and failing to attend the New Beginnings program as ordered.

¶14.   Three R's further argued that Conyers testified in his deposition that Fairchild, who claimed he was too ill to be deposed, had flown from Houston, Texas, to Biloxi, Mississippi, to meet with Conyers prior to Conyers's deposition.[2] Three R's pointed out that it had filed its motion for summary judgment prior to Fairchild's disclosure of Conyers as a witness, that Conyers admitted that he was a good friend of Fairchild's, and that the court was not required to accept affidavits submitted in bad faith. Three R's attached requests for admission in which it asked Fairchild to admit that the metadata from the photo taken of the hamburger reveals the picture was taken on October 15, 2019, and that the photo of Fairchild's scraped

_____

[2]   Three R's had noticed Fairchild's deposition for the same day as Conyers's deposition. However, Fairchild filed a motion for protective order, attaching a doctor's letter stating Fairchild's medical condition prevented him from traveling. At the time of the hearing on the summary judgment, Fairchild had not yet been deposed.

knuckles was taken on October 14, 2019, the day of the fall.[3]  Moreover, Fairchild admitted that he had no factual support to show that the metadata information was incorrect.  Three R's argued that the court was authorized to dismiss a lawsuit for discovery violations, which in this case was Fairchild's failure to timely disclose alleged witnesses and lying about his felony criminal record.

¶15.    On April 23, 2023, Keith's filed its reply to Fairchild's response to its motion for summary judgment.  Keith's urged the court not to consider Conyers's affidavit and deposition testimony because Fairchild had violated basic discovery rules.  Keith's pointed out that Fairchild had been served interrogatories on November 12, 2021, which he did not answer until January 18, 2022.  At that time, Fairchild did not disclose Conyers as a potential witness even though, according to Conyers, the two had discussed the discarded hamburger on the night of the fall.  Keith's pointed out that Fairchild had lied about his past criminal record and that Fairchild had told them that Conyers had no transportation or phone, when Conyers testified he had both.  For these reasons, Keith's contended that the court should not consider Conyers's affidavit under Rule 37 of the Mississippi Rules of Civil Procedure (sanctions for discovery violations).

*Other Defense Motions*

¶16.    On January 3, 2023, Fairchild designated Alan J. Robinson as an expert in "security, safety, fire safety, and emergency management" as well as Fairchild's unnamed treating physicians.  None of these experts' opinions were included in the designation.

---

[3] Fairchild offered no explanation in the responses he filed to the summary judgment motions for this critical date discrepancy.

¶17. On January 12, 2023, Three R's filed a motion to strike Fairchild's expert designation for his failure to include or supplement it with any opinions. Moreover, from Fairchild's interrogatory answers and the medical records Three R's had obtained, Fairchild had a lengthy list of pre-existing medical conditions prior to the 2019 fall, so the medical opinions were necessary for Three R's to know what injuries Fairchild was claiming arose from the fall. On January 22, 2023, Fairchild responded to Three R's motion arguing that he had designated his experts by the scheduling order deadline and that under the Mississippi Rules of Civil Procedure, any further discovery of the experts should be obtained by interrogatories. Further, Fairchild argued that Three R's had filed its motion to strike before Fairchild provided any supplemental discovery responses and that discovery was ongoing. However, the record does not reflect any supplementation of discovery responses by Fairchild after the motion.

¶18. On January 26, 2023, Three R's also filed a motion for partial summary judgment on damages. Three R's noted that Fairchild still had not detailed what he was claiming in medical damages or expenses. Fairchild had extensive pre-existing conditions, including two neck surgeries, two GI surgeries, three back surgeries, high blood pressure, and diabetes. Moreover, after the fall in October 2019, Fairchild fell down a flight of stairs in December 2019, fracturing his ribs. Arguing that Fairchild had not presented evidence to support his claim for damages from the fall at Keith's, Three R's sought a partial summary judgment on the issue of damages. Fairchild responded to the motion on May 12, 2023, arguing that discovery was still ongoing, that Fairchild had not been deposed, and that his treating

physicians or experts had not been questioned about Fairchild's medical conditions. To support his response, Fairchild attached his own affidavit in which he explained that he thought he had received a pardon for his past criminal convictions. Fairchild, however, gave no facts under oath concerning the events of the day of the fall or facts to support Conyers's affidavit or deposition testimony.

*Hearing on Motions for Summary Judgment*

¶19. On July 28, 2023, the circuit court heard arguments from the parties on the motions for summary judgment.[4] Three R's pointed out that the cause of Fairchild's fall had changed from Fairchild initially stating that he fell because of his shoes, then to claiming that he had slipped on some eggs or a pickle, and then to slipping on a hamburger. According to metadata of the digital photo, the photo of the alleged discarded hamburger was taken the day *after* the fall. Moreover, Fairchild did not initially disclose Conyers as a witness. Three R's contended that the affidavit was submitted in bad faith and contradicted by the clear objective metadata of the photograph.

¶20. In response, Fairchild argued that the case was a classic dispute of material facts requiring a review of the evidence and credibility of the witnesses by a jury. Conyers's affidavit and deposition created a genuine issue of material fact as to both constructive and actual notice of a dangerous condition. Three R's responded that there is no evidence of any notice to its employees. Three R's continued that when Fairchild was acting pro se and

---

[4] Although Three R's motion to strike Fairchild's experts and the motion for partial summary judgment on damages were also set for a hearing, the court heard and decided the motions for summary judgment first. Its ruling on them precluded the need for argument on the other motions set.

finally disclosed Conyers, Fairchild said that Conyers had no phone and needed six weeks before he could be deposed because Conyers had no transportation. However, at the deposition, Conyers said he had a phone and transportation. Moreover, when Conyers's deposition was set, Three R's wanted to depose Fairchild that same day. Fairchild obtained a protective order that prevented him from being deposed for alleged medical reasons. However, at Conyers's deposition, they learned that Fairchild had flown to Mississippi from Texas, met with Conyers, took him to the site of the fall, and spent three days preparing Conyers. The Keith's defendants joined in Three R's argument.

¶21. The circuit court judge ruled from the bench as follows:

> I'm going to strike Mr. Conyers' affidavit and deposition testimony. I'm gonna grant summary judgment for failure of proof and failure to establish that either defendant had either created the alleged dangerous condition or had actual or constructive notice of the condition.

The judge asked the parties to provide him with an order.

¶22. On August 1, 2023, the circuit court entered the order that the parties agreed to as to form, which merely states:

> • The affidavit and deposition testimony of Jeff Conyers are stricken.
>
> • Defendant Three R's LLC's *Motion for Summary Judgment* is hereby granted.
>
> • Defendant KS Ocean Springs Real Estate, LLC, and Keith's Superstore 89, LLC's *Motion for Summary Judgment is granted.*
>
> IT IS THEREFORE ORDERED AND ADJUDGED THAT Plaintiff John Fairchild's claims against Three R's, LLC's, KS Ocean Springs Real Estate, LLC, and Keith's Superstore 89, LLC, are hereby DISMISSED WITH PREJUDICE. Each party to bear its own cost.

On August 21, 2023, Fairchild filed his notice of appeal.

¶23. On appeal, Fairchild argues (1) that the circuit court erred in dismissing the case as a sanction for discovery violations and (2) that Conyers's affidavit and deposition created genuine issues of material facts precluding summary judgment.

**Standard of Review**

¶24. On appeal, we review the grant of a motion for summary judgment de novo, "viewing the evidence in the light most favorable to the non-moving party." *Loving v. MS Eye Care P.A.*, 381 So. 3d 1111, 1113 (¶6) (Miss. Ct. App. 2024). "The movant carries the burden of demonstrating that no genuine issue of material fact exists, and the non-moving party is given the benefit of the doubt as to the existence of a material fact." *ACE Am. Ins. Co. v. Hetsco Inc.*, 393 So. 3d 1015, 1021 (¶16) (Miss. 2024). Courts are required to view the facts in the light most favorable to the non-moving party. *Id*. However, "summary judgment 'is appropriate when the non-moving party has failed to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial.'" *Karpinsky v. Am. Nat. Ins. Co.*, 109 So. 3d 84, 89 (¶11) (Miss. 2013) (quoting *Buckel v. Chaney*, 47 So. 3d 148, 153 (¶10) (Miss. 2010)).

**Discussion**

¶25. In a negligence action, the plaintiff must establish the defendant's duty and prove the defendant's breach of that duty caused the plaintiff's damages. *Clinton Healthcare LLC v. Atkinson*, 294 So. 3d 66, 71 (¶9) (Miss. 2019). Negligence occurring on an owner's property is evaluated as a premises liability claim. *Venture Inc. v. Harris*, 307 So. 3d 427, 432 (¶19)

13

(Miss. 2020). "To succeed on a premises liability claim, the plaintiff is required to show (1) a negligent act by the defendant caused the plaintiff's injury; or, (2) the defendant had actual knowledge of a dangerous condition, but failed to warn the plaintiff of the danger; or, (3) the dangerous condition remained long enough to impute constructive knowledge to the defendant." *Sessums v. Chicken Nugget Inc.*, 396 So. 3d 510, 513 (¶12) (Miss. Ct. App. 2024) (internal quotation marks omitted). Mere proof of a fall is insufficient to show negligence on the part of the property owner. *Bonner v. Imperial Palace of Miss. LLC*, 117 So. 3d 678, 682 (¶11) (Miss. Ct. App. 2013).

¶26. Courts use a three-step process to determine the liability of a premises owner. *Venture Inc.*, 307 So. 3d at 433 (¶19). Courts first classify the injured person's status as an invitee, licensee, or trespasser. *Id*. That status determines the duty owed by the premises owner, and then whether that duty was breached, causing damages, is determined. *Id.*

¶27. Here, both parties agree that Fairchild was an invitee on Keith's and Three R's premises. Therefore, they "owed a duty to exercise reasonable care to keep the premises in a reasonably safe condition and to warn the invitee of dangerous conditions that are not readily apparent." *Id*. at (¶22) (citing *Clinton Healthcare LLC*, 294 So. 3d at 71 (¶9)). "No proof of the operator's knowledge of the condition is necessary where the condition is created by his negligence or the negligence of someone under his authority." *Id*. Otherwise, the plaintiff must prove actual or constructive knowledge of the alleged dangerous condition. *Id*.; *see also Bonner*, 117 So. 3d at 687 (¶30). In this case, Fairchild presented no proof that the negligence of any employee of Keith's or Three R's created the alleged dangerous

14

condition (a discarded hamburger on the outside sidewalk). Thus, to establish their liability, Fairchild needed to prove that Keith's or Three R's employees had actual or constructive notice of the condition but failed to act. "When a dangerous condition exists that was created by someone not associated with the business, the plaintiff must produce evidence that the owner or operator had actual or constructive knowledge of the dangerous condition as well as a sufficient opportunity to correct it." *Karpinsky*, 109 So. 3d at 89 (¶12).

¶28. The concept of "actual knowledge" is self-explanatory. The United States Supreme Court noted several dictionary definitions of the words "actual" and "knowledge":

> [T]he word "actual" . . . means . . . "existing in fact or reality." Webster's Seventh New Collegiate Dictionary 10 (1967); accord, Merriam-Webster's Collegiate Dictionary 13 (11th ed. 2005) (same); see also American Heritage Dictionary 14 (1973) ("In existence; real; factual"); *id*., at 18 (5th ed. 2011) ("Existing in reality and not potential, possible, simulated, or false"). . . . [K]nowledge . . . means "the fact or condition of being aware of something." Webster's Seventh New Collegiate Dictionary 469 (1967); accord, Merriam-Webster's Collegiate Dictionary 691 (2005) (same); see also American Heritage Dictionary 725 (1973) ("Familiarity, awareness, or understanding gained through experience or study"); *id*., at 973 (2011) (same). Thus, to have "actual knowledge" of a piece of information, one must in fact be aware of it.

*Intel Corp. Inv. Pol'y Comm. v. Sulyma*, 589 U.S. 178, 184 (2020). In premises liability cases, actual knowledge requires proof that a property owner knows of a current dangerous condition or should know of the danger from a past history of accidents. *Bonner*, 117 So. 3d at 687 (¶30) ("Mississippi has long followed the rule of admitting evidence of prior acts or accidents for the purpose of showing a dangerous condition and notice thereof, but this evidence has been admitted only in cases where other proof of negligence is present."). "Constructive knowledge is present where, based on the length of time that the condition

existed, the operator exercising reasonable care should have known of its presence." *Anderson v. SW Gaming LLC*, 387 So. 3d 99, 107 (¶35) (Miss. Ct. App. 2024) (citing *Bonner*, 117 So. 3d at 688 (¶37)). To establish constructive knowledge, a party must produce admissible evidence of the length of time that the hazard existed. *Id.* (citing *Cotton v. Fred's Stores of Tenn. Inc.*, 122 So. 3d 140, 143 (¶7) (Miss. Ct. App. 2013)). In this regard, "the court will indulge no presumptions to compensate for any deficiencies in the plaintiff's evidence as to the time period." *Id.*

¶29. At the summary judgment stage, if the opposing party bearing the burden of proof at trial "fails to make a showing sufficient to establish an essential element of the claim or defense, then all other facts are immaterial, and the moving party is entitled to judgment as a matter of law." *Bonner*, 117 So. 3d at 682 (¶10).

> Summary judgment, as defined under both our state and federal rules of civil procedure, is a mechanism by which a moving party is able to pierce the allegations made in the opponent's pleadings and, quite simply, place the non-moving party (opponent) in a position of having to convince the trial court via discovery documents (depositions, answers to interrogatories, admissions, etc.) and/or sworn affidavits that there are genuine issues of material fact which require resolution by a plenary trial before the trier-of-fact. In this way, summary judgment roots out mere accusation and conjecture in favor of merit and ultimately functions to force a non-movant to present some modicum of material evidence. While summary judgment is not a substitute for the trial of disputed fact issues, it is an effective rule of procedure which forces parties to produce evidence sufficient to convince a trial court that a genuine issue of material fact exists.

*Stuckey v. The Provident Bank*, 912 So. 2d 859, 866 (¶12) (Miss. 2005). This Court "examines all the evidentiary matters before it—admissions in pleadings, answers to interrogatories, depositions, affidavits, etc." *Jamison v. Barnes*, 8 So. 3d 238, 242 (¶7)

(Miss. Ct. App. 2008). To avoid summary judgment, the non-moving party must establish a genuine issue of material fact exists concerning one or more of the elements required to prove its claim. "If any triable issues of fact exist, the lower court's decision to grant summary judgment will be reversed. Otherwise the decision is affirmed." *Williams v. Potter & Sims Foods Inc.*, 226 So. 3d 1265, 1267 (¶6) (Miss. Ct. App. 2017).

¶30. In the case at hand, to survive summary judgment on his premises liability claim, Fairchild must show that there are material facts in dispute concerning the existence of a dangerous condition, and Keith's or Three R's knowledge of that condition (i.e., actual or constructive notice). In Conyers's affidavit and deposition testimony, he said that he told an employee of Keith's about the discarded hamburger prior to Fairchild's fall (i.e., actual notice). Conyers further said the discarded hamburger was outside four hours prior to Fairchild's fall (i.e., establishing Three R's constructive knowledge). Thus, whether the circuit court erred in striking Conyers's affidavit and deposition testimony is critical to the court's ruling on the motion for summary judgment and the survival of Fairchild's case against Keith's.

### I. Whether the circuit court erred in striking Conyers's affidavit.

¶31. In its ruling from the bench and in its written order, the circuit court did not give a reason for striking Conyers's affidavit. In such a case, we assume the court agreed with the prevailing party's argument. *Esco v. Madison County*, 331 So. 3d 545, 550 (¶17) (Miss. Ct. App. 2021); *see Smith v. Todd*, 464 So. 2d 1155, 1157 (Miss. 1985) ("[W]here the chancellor made no specific finding we are required to assume that the chancellor resolved all such fact

17

issues in favor of appellee."). On appeal, Keith's and Three R's argue that the circuit court struck the affidavit and dismissed Fairchild's case as a sanction for discovery violations pursuant to Mississippi Rule of Civil Procedure 37.[5] Both Keith's and Three R's contend that Fairchild had lied about his criminal record, failed to disclose a material witness of whom he was aware, and solicited perjury from Conyers—all discovery violations that warranted dismissal. Three R's also asked the trial court to strike Conyers's testimony both in its reply to Fairchild's response to Three R's motion for summary judgment and during the motions hearing.

¶32. Rule 37(b) of the Mississippi Rules of Civil Procedure authorizes trial courts to impose sanctions for failing to cooperate in discovery and comply with court orders. The Rule provides:

> (2) *Sanctions by Court in Which Action Is Pending*.
>
> (A) For Not Obeying a Discovery Order. If a party or an officer, director, or managing agent of a party or a person designated under Rules 30(b)(6) or 31(a) to testify in behalf of a party fails to obey an order to provide or permit discovery, including an order made under subsection (a) of this rule, the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:
>
>  . . . .
>
>> (ii) an order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence;
>>
>> (iii) an order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default

---

[5] We note, however, that the circuit court did not dismiss the case as a sanction for discovery violations. Rather, the court struck the affidavit and then proceeded to rule that Fairchild had not proved an essential element of his case.

18

against the disobedient party; . . . .

M.R.C.P. 37(b)(2)(A). "In the imposition of [a] sanction, the trial court has considerable discretion in matters pertaining to discovery and its orders will not be disturbed in the absence of abuse of discretion. Abuse of discretion is the most deferential standard of review appellate courts employ." *Fresenius Med. Care Holdings Inc. v. Hood*, 269 So. 3d 36, 53 (¶51) (Miss. 2018) (citation omitted). "Trial courts have considerable discretion in discovery matters and decisions will not be overturned unless there is an abuse of discretion." *Salts v. Gulf Nat. Life Ins. Co.*, 872 So. 2d 667, 670 (¶4) (Miss. 2004).

¶33. The trial court's discretion can include the sanction of striking a witness's affidavit. For example, in *Bowie v. Montfort Jones Memorial Hospital*, 861 So. 2d 1037, 1041 (¶11) (Miss. 2003), the family of the deceased filed suit against the hospital in 1999. Experts were to be designated by December 31, 2000, and motions for summary judgment were filed in January 2001. *Id*. Because the plaintiffs did not designate an expert until February 5, 2001, and did not file his affidavit until February 28, 2001, the circuit court struck both. *Id.* The Mississippi Supreme Court affirmed because the plaintiffs had "fail[ed] to comply with a trial court's order concerning the time frame for the completion of discovery." *Id*. at 1042 (¶13). Moreover, neither the expert's identity nor affidavit was made available until after the motion for summary judgment had been filed, notwithstanding the hospital's interrogatory concerning experts and the trial court's previously entered agreed scheduling order. *Id*.

¶34. Trial courts have also stricken experts critical to proving a party's case because of that party's discovery violations. In *E.I. DuPont de Nemours & Co. v. Strong*, 968 So. 2d 410,

414 (¶12) (Miss. 2007), the Mississippi Supreme Court affirmed such a sanction, stating:

> Under Mississippi Rule of Civil Procedure 37 and the inherent power of the trial court to protect the integrity of its process, the trial court has the broad authority to impose sanctions for abuse-of-discovery violations. While the striking of DuPont's expert witnesses is an extreme measure, we find that the trial court acted within its discretion to do so.

The Mississippi Supreme Court has even affirmed the outright dismissal of an action due to discovery violations. In *May v. Austin ex rel. Austin*, 240 So. 3d 389, 396 (¶24) (Miss. 2018), the Supreme Court stated:

> On appeal, we have articulated our standard of review through the cases above, encouraging trial courts to dismiss matters when parties deliberately attempt to subvert the judicial process. The Court favors dismissal as a sanction of last resort, although, when a party's failure to comply with the trial court's orders results from willfulness or bad faith, we will not hesitate to affirm. . . . [W]e must stay true and honor the appropriate standard of review, allowing the discretionary decisions of a trial judge to stand. If nothing in the trial record suggests an 'arbitrary' or 'clearly erroneous' ruling was made by the learned trial judge, or instills in this Court a 'definite and firm conviction that the court below committed a clear error of judgment,' we must affirm the dismissal.

In a case where a party lied in discovery about her prior injuries, the Supreme Court affirmed the trial court's dismissal of her claim, stating that true, responsive, and complete answers in discovery are essential; "a false answer is in some ways worse than no answer; it misleads and confuses the party." *Edwards v. Coca Cola Bottling Co. United Inc.*, 264 So. 3d 763, 769 (¶16) (Miss. 2019).

¶35. Whether to strike an affidavit is within the sound discretion of the trial court. *Trustmark Nat. Bank v. Meador*, 81 So. 3d 1112, 1116 (¶9) (Miss. 2012); *John Mozingo Real Est. & Auction Inc. v. Nat'l Auction Grp. Inc.*, 925 So. 2d 141, 147 (¶21) & n. 4 (Miss. Ct. App. 2006). When reviewing a trial court's decision for abuse of its discretion, we normally

20

will affirm unless "we have a definite and firm conviction that the circuit court committed a 'clear error of judgment' in reaching its conclusion after weighing any relevant factors." *Clarksdale Pub. Utils. Comm'n v. Miss. Dep't of Emp. Sec.*, 393 So. 3d 1048, 1064 (¶49) (Miss. Ct. App. 2024).

¶36. In the case at hand, as in *Bowie*, Fairchild failed to disclose the identity of his witness, Conyers, until after Three R's and Keith's had filed their motions for summary judgment. Moreover, in his earlier discovery response, Fairchild claimed he did not know the witness's name or whereabouts. Then, months after the summary judgment motions had been filed, Fairchild presented the affidavit of his apparently close friend. Fairchild then had told Keith's and Three R's that Conyers had no transportation or phone, but Conyers testified he had both. This was not Fairchild's only fabrication. Fairchild lied when he said he had no prior criminal convictions, but, in fact, he had been previously convicted on ten counts of obtaining controlled substances by fraud or deception and convicted of receiving stolen property. Moreover, Fairchild falsely represented to the court that he was too ill to travel to Mississippi for his deposition, but he nonetheless came to the state to assist Conyers in preparing for his deposition. Fairchild failed to provide opinions for the experts he designated as required under Rule 26 of the Mississippi Rules of Civil Procedure. "The supreme court has emphasized that it is imperative for parties to disclose more than just the general subject matter on which an expert will testify." *Kronfol v. Johnson*, 283 So. 3d 1162, 1176 (¶32) (Miss. Ct. App. 2019). The disclosure must be sufficient to put the opposing party on notice of the proffered testimony. *Id*. On the whole, the record reflects Fairchild's

21

general evasive and uncooperative attitude throughout the discovery process.

¶37. In addition, the objective evidence in the record contradicts Conyers's testimony. He said that Fairchild fell on October 13, 2019, but the fall occurred on October 14, 2019. Moreover, the undisputed metadata from the photo of the hamburger bun that Conyers allegedly took showed that the picture was taken on October 15, 2019, the day *after* the fall. On October 14, 2019, Fairchild declined to complete his portion of the incident report. But he returned the next day to do so, which is the same date that the photograph of the discarded hamburger bun was taken. Given these facts and Fairchild's deceptive behavior and evasive answers to discovery, we find no clear error or abuse of discretion by the circuit court when it struck Conyers's affidavit.

## II. Whether the circuit court erred in granting summary judgment.

¶38. "An appeal from summary judgment is reviewed de novo, and we view the evidence in the light most favorable to the non-moving party." *Boyanton v. Bros. Produce Inc.*, 312 So. 3d 363, 372 (¶26) (Miss. Ct. App. 2020). "Summary judgment is appropriate when the non-moving party has failed to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Chapman v. Coca Cola Bottling Co.*, 180 So. 3d 676, 681 (¶19) (Miss. Ct. App. 2015). The moving party must *persuade* the trial judge that no genuine issues of material fact exist and that on the facts established, it is entitled to judgment as a matter of law. *Thomas v. Boyd Biloxi LLC*, 360 So. 3d 204, 210 (¶17) (Miss. 2023); *accord* M.R.C.P. 56(c). However, the non-moving party "carries the burden of *producing* sufficient evidence of the

essential elements of her claim at the summary-judgment stage, as she would carry the burden of production at trial." *Id.* Moreover, the proof presented must be more than a mere scintilla of colorable evidence; it must be evidence upon which a fair-minded jury could return a favorable verdict. *Van v. Grand Casinos of Miss. Inc.*, 767 So. 2d 1014, 1018 (¶7) (Miss. 2000)*; Strantz v. Pinion*, 652 So. 2d 738, 741 (Miss. 1995). The trial court, and we, too, on appeal must review all the evidence presented when deciding whether a grant of summary judgment is proper. *Hill v. Cent. Sunbelt Fed. Credit Union*, 349 So. 3d 1181, 1184 (¶4) (Miss. Ct. App. 2022) ("Accordingly, just like the trial court, this Court looks at all evidentiary matters in the record, including admissions in pleadings, answers to interrogatories, depositions, affidavits, etc.").

¶39.     As previously noted, a premises liability claimant must show knowledge (actual or constructive) of the landowner of a dangerous condition on its property. *Bonner*, 117 So. 3d at 687 (¶30).  First, Fairchild presented no documentary proof that a dangerous condition existed on October 14, 2019, the day of the fall.  The photograph of the discarded hamburger bun was taken the day after the fall.  The only other proof of the existence of a dangerous condition or notice to Three R's and Keith's was Conyers's affidavit testimony that he reported a discarded hamburger to a Keith's employee that morning.  Because we find that the trial court did not err in striking Conyers's testimony and because Fairchild presented no other proof of a dangerous condition or notice, we further find no error in the trial court's grant of summary judgment in favor of Three R's and Keith's.

¶40.     Even if the affidavit had not been struck, from our de novo review of the record, we

23

find that Conyers's testimony was untrustworthy and contradictory. In his affidavit, Conyers described the discarded food as "old, spilled food and a wrapper," but in his deposition he said he only saw "just a hamburger. There wasn't even a wrapper on it." Conyers said in his affidavit that the burger was greasy, but in his deposition he said the food remains were dry and crusty. It is undisputed that Fairchild fell on October 14, 2019, but Conyers said in his affidavit that the fall occurred on October 13. Most significantly, Conyers stated that he took the photograph of the discarded hamburger bun using Fairchild's camera *on the day of the fall*. But the metadata of the photo shows the photo was taken on October 15, *the day after the fall*. Conyers's testimony is blatantly contradicted by this metadata, which Fairchild himself did not dispute.[6] Based upon our de novo review of the record, including Conyers's affidavit and deposition testimony regarding the incident, Fairchild's discovery responses, the photographs, metadata, the incident report, the lack of objective evidence that a dangerous condition even existed at the time, we find that Fairchild's premises liability claim was so "blatantly contradicted by the record . . . that no reasonable jury could believe it." *Thomas*, 360 So. 3d at 211 (¶25).

¶41. Additionally, in any premises liability case, the claimant must prove that a dangerous condition existed that caused his alleged injury. *Walker v. Cellular S. Inc.*, 309 So. 3d 16, 25 (¶31) (Miss. Ct. App. 2020) (proof that an injury was caused by a 'dangerous condition' is an essential element of a premises liability claim). "A property owner cannot be found

---

[6] In *Duckworth v. Warren*, 10 So. 3d 433, 438 (¶12) (Miss. 2009), the Mississippi Supreme Court interpreted *Scott v. Harris*, 550 U.S. 372 (2007), and concluded it stated that trial courts may consider a videotape that captures an event as evidence and which contradicts one party's version for the purpose of ruling on a summary judgment motion.

liable for the plaintiff's injury where no dangerous condition exists." *Id*. We have held that "the existence of a dangerous condition cannot be shown merely because an accident occurred." *Id*. at 521 (¶10). In *Trull v. Magnolia Hill LLC*, 171 So. 3d 518, 521 (¶10) (Miss. Ct. App. 2014), where the claimant contended that variations in a walkway was a dangerous condition, we stated that "Trull cannot rely on her testimony alone as evidence that the threshold in question actually constituted a danger." In this case, Fairchild presented no proof other than his own contentions that what he allegedly slipped on was in fact a dangerous condition. Although Fairchild designated a safety expert, he provided no opinions by that expert that the discarded hamburger was a dangerous condition. Even if Conyers's affidavit had not been struck, the proof Fairchild presented of the existence of a dangerous condition was so weak that no fair-minded jury could find in Fairchild's favor. "[T]o survive summary judgment, the party opposing the motion must rebut by producing *significant probative* evidence showing that there are indeed genuine issues for trial." *Goode v. Walmart Inc.*, 372 So. 3d 149, 156 (Miss. Ct. App. 2023). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

¶42. Because Fairchild failed to submit the requisite "significant probative evidence" to show that a genuine issue of material fact exists with respect to his claim against Three R's and Keith's, we affirm the circuit court's grant of summary judgment in their favor.

**Conclusion**

25

¶43. We hold that the trial court did not abuse its discretion in striking Conyers's affidavit and testimony. Moreover, because Fairchild presented no other proof of notice (actual or constructive) to Three R's and Keith's of any alleged dangerous condition existing on October 14, 2019 (the day of the fall), we affirm the circuit court's grant of summary judgment in favor of Three R's and Keith's.

¶44. **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., WESTBROOKS, LAWRENCE, McCARTY, EMFINGER, WEDDLE AND ST. PÉ, JJ., CONCUR. WILSON, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**